Jean C. JESSE, by her Guardian ad Litem, David W. Reinecke and Vern Jesse, Sr., Plaintiffs-Respondents-Petitioners,

v.

R. Clarke DANFORTH, M.D., R. Clarke Danforth, M.D., S.C., Donald P. Ullrich, M.D., Neurodiagnostic Associates, a Partnership, Neurosurgical Specialists, S.C. and Neurodiagnostic Associates, a Division of Neurosurgical Specialists, S.C., Defendants-Appellants,

W. Gregory VON ROENN, M.D., W. Gregory Von Roenn, M.D., S.C., Michael V. Darnieder, M.D., Wisconsin Patients Compensation Fund, Physicians Insurance Company of Wisconsin, Inc., The Professionals Insurance Company and The Medical Protective Company, Defendants,

BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, Milwaukee County Department of·Health & Human Services, as agent for Wisconsin Department of Health & Social Services, Division of Health, Subrogated Parties.

Supreme Court

*No. 90–1312. Oral argument May 27, 1992.—Decided June 23, 1992.*

(Also reported in 485 N.W.2d 63.)

*See Callaghan's Wisconsin Digest, same topic and section number.

For the plaintiffs-respondents-petitioners there were briefs by *Jack R. DeWitt, John D. Varda* and *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* Madison and oral argument *Mr. Varda.*

For the defendants-appellants, R. Clarke Danforth, M.D. and R. Clarke Danforth, M.D., S.C., there was a brief by *Kathleen E. Bonville, Mark E. Larson* and *Gutglass, Erickson & Bonville, S.C.,* Milwaukee and oral argument by *Mr. Larson.*

For the defendants-appellants, Donald P. Ullrich, M.D., Neurodiagnostic Associates and Neurosurgical Specialists, there was a brief by *Michael P. Malone, Susan R. Tyndall* and *Hinshaw & Culbertson,* Milwaukee and oral argument by *Ms. Tyndall.*

DAY, J. This is a review of a published decision of the court of appeals[1] that reversed a non-final order of the Circuit Court for Milwaukee County, William J. Haese, Judge, which denied defendants Drs. Danforth's and Ullrich's motions to disqualify DeWitt, Porter, Huggett, Schumacher & Morgan, S.C. (DeWitt) as plaintiffs' counsel.

The issue in this case is whether a conflict of interest exists such that DeWitt should be disqualified from representing plaintiffs in their medical malpractice action against defendants. Because we find no conflict of

---

[1] 163 Wis. 2d 1044, 473 N.W.2d 532 (Ct. App. 1991).

interest to exist, we hold that the DeWitt firm should not be disqualified from representing plaintiffs in their action against the defendants. We therefore reverse the court of appeals and remand the cause to the circuit court for reinstatement of the DeWitt firm as plaintiffs' counsel.

Defendants Drs. Danforth and Ullrich are involved in several entities that own and operate sophisticated and expensive diagnostic tools, as well as entities that provide medical services. The relationship between these entities is complex.

Neurodiagnostic Associates is a division of Neurosurgical Specialists, S.C. Both are defendants in this case. Neurodiagnostic Associates is a partnership formed in 1975 to own and operate a computerized axial tomography scanning machine (CAT). The CAT scanner was subsequently sold to Dr. Ullrich who, in turn, leased it to Neurodiagnostic Associates. Drs. Danforth and Ullrich are both partners in Neurodiagnostic Associates.

In 1985, a group of twenty-three physicians, including Drs. Danforth and Ullrich, retained Attorney Douglas Flygt (Flygt) of DeWitt to assist them in creating a corporate entity for the purpose of purchasing and operating a magnetic resonance imaging (MRI) machine. An MRI scanner is currently the most advanced radioimaging technology and is an improvement on the previously available CAT scanner.

Flygt incorporated MRI Associates of Greater Milwaukee (MRIGM) in January, 1986 and continues as its corporate counsel. The twenty-three physicians, including Drs. Danforth and Ullrich, became the shareholders of MRIGM and Dr. Danforth became its president. Dr. Danforth was, and is, the main contact of DeWitt with MRIGM. In 1987, MRIGM formed a service corporation

and elected subchapter S treatment under the Internal Revenue Code which permits a qualified small business corporation and its shareholders to elect to be taxed as a partnership while retaining the benefits of a corporation.

MRIGM is a general partner in Milwaukee Magnetic Resonance Consortium, which owns and operates a free-standing MRI facility in Milwaukee, and a partner in MRI Physicians of Greater Milwaukee, which provides the professional services at Milwaukee Magnetic Resonance Consortium. Neither MRIGM, Milwaukee Magnetic Consortium, nor MRI Physicians of Greater Milwaukee are parties to this action.

In May 1988, plaintiffs retained Attorney Eric Farnsworth (Farnsworth), of DeWitt, to represent them in a medical malpractice action against defendants. After consulting with the Jesse family, Farnsworth conducted an internal conflicts check that apparently did not list Drs. Danforth or Ullrich as clients. Farnsworth filed an initial summons and complaint as well as several amended summons and complaints.

The complaints allege, *inter alia,* that defendants were negligent for failing to obtain a tomography of sufficient quality or resolution to accurately serve as a diagnostic tool. The CAT scanner employed for plaintiff Jesse was allegedly the one owned by Dr. Ullrich which he leased to Neurodiagnostic Associates. Plaintiffs allege that Neurodiagnostic Associates made the CAT scanner available in the course of plaintiff's treatment and charged a fee to plaintiff Jesse. Plaintiffs further allege that a portion of that fee was shared with, or refunded to, defendants as a financial incentive for them to utilize the machine.

Drs. Danforth and Ullrich moved for disqualification of the DeWitt firm alleging a conflict of interest. On May 21, 1990, Judge Haese, ruling from the bench,

denied the motions for disqualification and awarded DeWitt statutory costs. A written order denying the motions was subsequently issued. Drs. Danforth and Ullrich appealed, and on July 16, 1991, the court of appeals issued its decision reversing the circuit court's order. We granted petitioners' petition for review and now reverse the court of appeals.

We begin with SCR 20:1.7, the conflict of interest rule.[2] Subsection (a) states: "A lawyer shall not represent a client if the representation of that client will be directly adverse to another, unless. . . ."[3] Thus, the question is, who did or does DeWitt represent, *i.e.*, who were and are DeWitt's clients?

---

[2] **SCR 20:1.7 Conflict of interest: general rule**

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents in writing after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[3]Because the attorneys Flygt and Farnsworth are both associated with the DeWitt firm, SCR 20:1.10 Imputed disqualification: general rule, applies. SCR 20:1.10 states in part:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 [Conflict of Interest: General Rule], 1.8(c) [Conflict of Interest: Prohibited Transactions], 1.9 [Conflict of Interest: Former Client] or 2.2 [Intermediary].

It is undisputed that DeWitt, through Farnsworth, represents Jean Jesse in this case. What remains disputed is whether Drs. Danforth or Ullrich were ever or are currently clients of DeWitt.

Defendants argue that Drs. Danforth and Ullrich are clients of the DeWitt firm due to Flygt's pre-incorporation representation of the twenty-three physicians and due to other advice provided to Drs. Danforth and Ullrich by Flygt. Defendants argue that, under SCR 20:1.7, DeWitt's representation of the plaintiffs is "directly adverse" to DeWitt's representation of defendants Drs. Danforth and Ullrich and therefore a conflict of interest exists disqualifying the DeWitt firm from representing plaintiffs.

Defendants argue that one must look to the facts of each particular case to determine whether an attorney-client relationship exists. Defendants cite to and quote affidavits and documents, discussed later in this opinion, which, to them, show that Drs. Danforth and Ullrich were DeWitt's clients.

Plaintiffs argue that DeWitt never represented Drs. Danforth or Ullrich. They readily concede that DeWitt, through Flygt, originally incorporated MRIGM and that Flygt remains corporate counsel to MRIGM. However, plaintiffs assert that DeWitt's representation of MRIGM does not translate into representation of its shareholders.

Plaintiffs argue, under the "entity rule," as expressed by SCR 20:1.13,[4] that where a firm represents

---

[4] **SCR 20:1.13 Organization as client**

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents. . . .

(d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when it is apparent that the

a corporate organization, the organization, not the shareholders, is the lawyer's client. Therefore, plaintiffs argue that DeWitt's representation of MRIGM does not equate with representation of Drs. Danforth or Ullrich. Plaintiffs conclude that because DeWitt never represented Drs. Danforth or Ullrich, there is no conflict of interest.

We conclude that the entity rule does extend to Drs. Danforth and Ullrich such that DeWitt's pre-incorporation involvement with Drs. Danforth and Ullrich is properly characterized as representation of MRIGM, not Drs. Danforth or Ullrich, *i.e.,* DeWitt's client was and is MRIGM, not Drs. Danforth or Ullrich.

The entity rule contemplates that where a lawyer represents a corporation, the client is the corporation, not the corporation's constituents.[5] First, the title of the section is demonstrative, it states, "*Organization* as Client." (Emphasis added.) Second, subsection (a) states, "A lawyer employed or retained by an organization *represents the organization* acting through its duly authorized constituents." (Emphasis added.) Third, subsection (d) states, "In dealing with an organization's . . . constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are

---

organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

[5]The Comment to SCR 20:1.13 defines "constituent" to be the corporation's officers, directors, employees and shareholders.

adverse to those of the constituents with whom the lawyer is dealing." This clearly implies it is the organization, not the constituent that is the lawyer's client. Fourth, subsection (e) begins, "A lawyer representing an organization may also represent any of its . . . constituents. . . ." The use of the phrase "may also represent" implies that the lawyer does not automatically represent the constituent when he or she represents the corporate entity. Fifth, the Comment to SCR 20:1.13 states in part:

> When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6 [Confidentiality of Information]. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by Rule 1.6. *This does not mean, however, that constituents of an organizational client are the clients of the lawyer.*

SCR 20:1.13 (emphasis added).

Thus, the clear purpose of the entity rule was to enhance the corporate lawyer's ability to represent the best interests of the corporation without automatically having the additional and potentially conflicting burden of representing the corporation's constituents.

If a person who retains a lawyer for the purpose of organizing an entity is considered the client, however, then any subsequent representation of the corporate entity by the very lawyer who incorporated the entity would automatically result in dual representation. This

240

automatic dual representation, however, is the very situation the entity rule was designed to protect corporate lawyers against.

We thus provide the following guideline: where (1) a person retains a lawyer for the purpose of organizing an entity and (2) the lawyer's involvement with that person is directly related to that incorporation and (3) such entity is eventually incorporated, the entity rule applies retroactively such that the lawyer's pre-incorporation involvement with the person is deemed to be representation of the entity, not the person.

In essence, the retroactive application of the entity rule simply gives the person who retained the lawyer the status of being a corporate constituent during the period before actual incorporation, as long as actual incorporation eventually occurred.

This standard also applies to privileged communications under SCR 20:1.6.[6] Thus, where the above standard is met, communications between the retroactive constituent and the corporation are protected under SCR 20:1.6. And, it is the corporate entity, not the retroactive constituent, that holds the privilege. This tracks the Comment to SCR 20:1.13 which states in part: "When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is

---

[6] **SCR 20:1.6 Confidentiality of information**

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b), (c) and (d)
. . . ..

protected by Rule 1.6." *See also Bobbitt v. Victorian House, Inc.*, 545 F. Supp. 1124 (1982).

■

However, where the person who retained the lawyer provides information to the lawyer not directly related to the purpose of organizing an entity, then it is the person, not the corporation which holds the privilege for that communication.

■

Applying the above standard to the case at hand, we observe that the evidence cited and quoted by the defendants demonstrates that the above standard is met and that DeWitt represented MRIGM, not Drs. Danforth or Ullrich.

For example, defendants Drs. Danforth and Ullrich point to Flygt's affidavit wherein Flygt states that he was contacted *"to assist a group of physicians in Milwaukee in organizing an entity* to own and operate one or more magnetic resonance imaging ('MRI') facilities. . . ."* (Emphasis added.)

Dr. Danforth points to a January 29, 1986 letter from Flygt to Dr. Danforth wherein Flygt stated:

> Regarding other matters, I would suggest that *the corporation* come to a quick resolution of the subchapter S corporation question. I think it would be beneficial for me to put together a brief outline of the issues concerning this. (Emphasis added.)

Drs. Danforth and Ullrich point to a May 5, 1986 letter from Flygt to Richard Canter, a non-DeWitt attorney who represents various hospitals, which discusses the need for financial projections concerning MRIGM as a subchapter S corporation and states, "The doctors will need some time to digest those numbers before they can

have a meaningful discussion as to how to finally structure the entity."

Drs. Danforth and Ullrich point to a May 5, 1986 letter from Flygt to Dr. Danforth which states, "One of the reasons why the doctors in MRIGM were making the large investment and wanted the corporation to be taxed as an S corporation was to take advantage of any tax losses flowing through to them as general partners." The letter goes on to discuss attorneys fees concluding, "to the extent that there are common expenses of the partnership, such as drafting documents, etc., *it would be appropriate to have the entity pay those fees while the attorneys fees of each individual group are its own cost.*" (Emphasis added.)

Dr. Danforth and Ullrich point to a May 13, 1987 memorandum Flygt wrote to the "Shareholders" of MRIGM. The memorandum begins, "The purpose of this letter is to advise you as to a decision *which must be made by the corporation* at this time." (Emphasis added.) The memorandum then discusses the option of converting MRIGM to a service corporation and the liability benefits to the shareholders flowing from such a conversion.

This evidence overwhelmingly supports the proposition that the purpose of Flygt's pre-incorporation involvement was to provide advice with respect to organizing an entity and that Flygt's involvement was directly related to the incorporation. Moreover, that MRIGM was eventually incorporated is undisputed.

In addition, with respect to Flygt's advice concerning the structure of the entity, the fact that a particular corporate structure may benefit the shareholders or the fact that there was communication between Flygt and the shareholders concerning such structuring does not

mean that Drs. Danforth and Ullrich were the clients of the law firm. Again, the very purpose of the entity rule is to preclude such automatic dual representation.

We are in complete agreement with the circuit court's finding that the services rendered by Flygt were of a corporate nature. The circuit court stated in part:

> At first blush it's difficult for the court to see any conflict except an identity of names. You've got a corporation here consisting of something in excess of 20 doctors. *The services previously rendered were of a corporate nature, advice, counsel given to a number of the doctors· that were involved with this corporation and the present lawsuit involves a question of personal malpractice on the· part of a person who happens to be a shareholder and member of that firm [corporation].* (Emphasis added.)

Drs. Danforth and Ullrich also contend that they provided certain confidential information to attorney Flygt that should disqualify DeWitt under SCR 20:1.6, the confidential information rule. Defendants point to questionnaires Flygt provided to the physicians involved in the MRI project which inquire, in part, as to the physicians' personal finances and their involvement in pending litigation.

Because MRIGM, not the physician shareholders, was and is the client of DeWitt, and because the communications between Drs. Danforth and Ullrich were directly related to the purpose of organizing MRIGM, we conclude that Drs. Danforth or Ullrich cannot claim the privilege of confidentiality.

Dr. Ullrich asserts that there is also a conflict of interest between DeWitt's undisputed representation of MRIGM and DeWitt's undisputed representation of the

plaintiffs. We disagree. For a conflict to exist, the representation of one client must be "directly adverse" to the representation of another client. Defendant Ullrich asserts that DeWitt's representation of plaintiff Jesse is directly adverse to DeWitt's representation of MRIGM by arguing that Drs. Danforth and Ullrich could lose their licenses to practice medicine if plaintiff Jesse prevails and MRIGM would face the loss of two of its shareholders and its president. Defendant Ullrich argues that, in light of plaintiffs' "financial incentive" allegations concerning the use of the CAT scanner, prosecution of this case could "mar" MRIGM's reputation and result in an adverse financial impact. Defendant Ullrich argues that DeWitt possesses information that most persons would consider confidential and, if DeWitt is allowed to continue as plaintiff Jesse's counsel, it may be difficult for MRIGM to secure additional shareholders who fear disclosure of such information.

Such possibilities fall short of "direct" adversity. While "directly adverse" and "indirectly adverse" are somewhat nebulous and factually dependent terms, the possible ramifications of DeWitt's representation of plaintiff Jesse are simply insufficient to be characterized as "directly adverse" to DeWitt's representation of MRIGM.

■

Motions to disqualify are reviewed under the abuse of discretion standard. *State v. Miller,* 160 Wis. 2d 646, 654, 467 N.W.2d 118 (1991).

> The trial court "possesses broad discretion in determining whether [attorney] disqualification is required in a particular case, and the scope of our review is limited accordingly." Generally, we will not find an abuse of discretion if the record shows that discretion was in fact exercised and we can perceive a

reasonable basis for the trial court's decision. However, "we have never hesitated to reverse discretionary determinations where the exercise of discretion is based on an error of law."

*Berg v. Marine Trust Co.,* 141 Wis. 2d 878, 887, 416 N.W.2d 643 (Ct. App. 1987) (citations omitted).

Our review of the record persuades us that the circuit court did not abuse its discretion. Based on the substantial difference in representing a corporate entity and representing one in an action against some of the shareholders of that entity, and based upon the finding that the services rendered by DeWitt to MRIGM were of a corporate nature, the circuit court's decision was firmly grounded on a reasonable basis. Furthermore, the circuit court's legal conclusion that no conflict of interest existed was correct.

We conclude that the circuit court did not abuse its discretion in denying Drs. Danforth's and Ullrich's motions for disqualification. We therefore reverse the court of appeals and remand the cause to the circuit court to reinstate DeWitt as legal counsel for the plaintiffs.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

JUSTICES LOUIS J. CECI and WILLIAM A. BABLITCH withdrew from participation.