MARTEN TRANSPORT LTD., a domestic corporation, Plaintiff-Respondent,†

v.

HARTFORD SPECIALTY CO., a foreign corporation, Hartford Fire Insurance Co., a foreign corporation, Twin City Fire Insurance Co., a foreign corporation, Hartford Accident & Indemnity Co., a foreign corporation, Hartford Insurance Co. of Illinois, a foreign corporation, Hartford Insurance Co. of the Southeast, a foreign corporation, Hartford Insurance Co. of the Midwest, a foreign corporation, Hartford Underwriters Insurance Co., a foreign corporation, and Hartford Casualty Insurance Co., a foreign corporation, Defendants-Appellants.

Court of Appeals

*No. 92–1416. Oral argument May 25, 1993.—Decided November 16, 1993.*

(Also reported in 509 N.W.2d 106.)

†Petition to review granted.

For the defendants-appellants the cause was submitted on the briefs of *William A. Montgomery* and *Robert D. Campbell* of *Schiff, Hardin & Waite,* of Chicago, Illinois; and *Larry J. Britton* of *Vlasak, Rosenbaum, Weede & Britton, S.C.,* of Milwaukee, Wisconsin; with oral argument by *Robert D. Campbell.*

For plaintiff-respondent the cause was submitted on the briefs of *Christopher D. Walther, Daniel L. Zitzer, Lorry Conrad Eldien,* and *Cristy J. Farley* of *Christopher D. Walther & Associates, S.C.,* of Milwaukee; with oral argument by *Christopher D. Walther.*

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   Hartford appeals from a nonfinal order denying its motion to disqualify the law firm of Christopher D. Walther & Associates, S.C. (Walther) as attorneys for Marten Transport Ltd.[1] We conclude that the trial court erroneously denied Hartford's motion to disqualify Walther, and thus, we reverse the trial court's order.

In the instant action, Marten Transport seeks recovery for Hartford's alleged negligence and breach of contract in administering and adjusting insurance claims covered by insurance contracts between Hart-

---

[1] This court granted Hartford's petition for leave to appeal on August 5, 1992.

ford and Marten Transport. Marten Transport is represented in this action by Walther. Hartford argues that Walther should be disqualified as counsel because Walther had previously represented, and in fact continues to represent, both Marten Transport and Hartford, as joint clients, in worker's compensation claims filed against Marten Transport and Hartford.

Marten Transport concedes that Walther had, and in fact continues to have, an ongoing relationship with Hartford. Marten Transport characterizes that relationship as one between co-agents, with both Walther and Hartford serving as agents of Marten Transport. Marten Transport argues that the relationship between Walther and Hartford is not, and never has been, an attorney-client relationship. Thus, Marten Transport contends that the trial court properly denied Hartford's motion to disqualify Walther. We disagree.

■

A trial court is vested with broad discretion to decide whether to disqualify an attorney and our review is limited accordingly. *Jesse v. Danforth*, 169 Wis. 2d 229, 245, 485 N.W.2d 63, 69 (1992). The proper exercise of discretion involves a reasoning process in which the trial court applies relevant law to facts of record to arrive at a reasonable conclusion. *Burkes v. Hales*, 165 Wis. 2d 585, 590-91, 478 N.W.2d 37, 39 (Ct. App. 1991).

We conclude that the trial court erroneously exercised its discretion because the undisputed facts lead to the necessary conclusion that an attorney-client relationship exists between Hartford and Walther. That relationship, we conclude, requires Walther's disqualification in the present case under SCR 20:1.7.

Supreme Court Rule 20:1.7 provides:

**Conflict of interest: general rule**.

(a)   A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1)   the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2)   each client consents in writing after consultation. . . .

The first question that this court must address is whether Hartford is Walther's client. *See Jesse v. Danforth*, 169 Wis. 2d at 237, 485 N.W.2d at 66. To answer this question, we examine the facts of this case. The dispositive facts are undisputed and are found in affidavits filed by the parties.

From July 9, 1987, to December 31, 1989, Hartford provided Marten Transport with general liability, automobile liability, and worker's compensation insurance. Under the insurance agreements, Hartford agreed to defend Marten Transport against any claim, proceeding or suit for claims payable by the insurance. Under the worker's compensation policy, Hartford would retain attorneys for Marten Transport and pay awards or settlements for which Marten Transport was liable.

Walther had represented Marten Transport since 1985, and in 1989, became its general litigation counsel. At a meeting in April of 1989, Marten Transport informed Hartford that it wished to utilize Walther's services to handle certain worker's compensation claims under Hartford policies.[2] Hartford objected to Walther's representation because Walther was not on Hartford's list of approved attorneys. Nonetheless,

---

[2] Walther was not involved on claims relating to automobile or general liability policies issued by Hartford.

Hartford conceded that Marten Transport had the right to choose its own attorney, but clearly indicated that it "would not be responsible for any recommendations made or advice given by . . . Walther regarding Marten Transport's claims."[3]

While handling the worker's compensation claims, Walther advised Hartford and Marten Transport as to the merits of the claims and possible defenses. Walther negotiated settlements and appeared as an advocate in contested matters. Hartford employees communicated on a regular basis with Walther on pending claims. Walther held itself out to third parties as the attorney for both Marten Transport and Hartford in responding to claims, in correspondence with plaintiffs, and in a complaint seeking subrogated damages filed in the United States District Court of Arizona.[4] It is undisputed that Walther continues to handle several pending worker's compensation claims under the Hartford policy.

In December of 1991, Walther represented Marten Transport in the commencement of the present action. Hartford moved for disqualification of Walther as coun-

---

[3] This characterization of Hartford's response is found in affidavits filed in opposition of Hartford's motion to disqualify. The statement is found in the affidavits of Mark C. Ryder, who served as Marten Transport's Director of Risk Management from 1987 to 1990, and Debra E. Hayden, Marten Transport's current Risk Manager, both of whom were present at the April 1989 meeting.

[4] Walther filed a complaint on behalf of Hartford and Marten Transport, as co-plaintiffs, seeking $500,000 in subrogated damages. Marten Transport's employee sustained injuries in the course of employment, for which Marten Transport and Hartford, as subrogees, sought recovery from the tortfeasor's employer for payments to Marten's injured employee.

sel for Marten Transport, arguing that Walther could not represent one client in litigation against another client. In response, Marten Transport argued that no attorney-client relationship had ever existed between Walther and Hartford. Marten Transport explained that although it may appear to outsiders that such a relationship existed, the true facts, known to both Marten Transport and Hartford, prove that Walther was only acting as an attorney for Marten Transport.

Specifically, Marten Transport argued that Hartford had no real interest in any of the claims due to the unique relationship between Hartford and Marten Transport; that is to say, due to a very high deductible and retrospective premium arrangement in the worker's compensation policy, Marten Transport was, in essence, self-insured, and Hartford merely acted as a third-party claims administrator. [5] At all times, Mar-

---

[5] Hartford employee Mary Rossetti, Unit Director, Special Accounts Insurance, described the retrospectively rated policies in her affidavit:

> The worker's compensation and general liability insurance Hartford provided to Marten included a retrospective rating program. This means that a portion of the premium that Marten agreed to pay for the insurance coverage would be based upon the actual losses for the claims covered by the insurance policies. The retrospective rating program uses the following formula to produce the retrospective premium: (losses + company expenses + loss limitation charge) × tax multiplier = retrospective premium.
>
> . . . The retrospective premium that Marten may owe for this worker's compensation and general liability insurance is limited in two ways. First, losses for any one occurrence in excess of $250,000 are not included in the retrospective rating. (This $250,000 is called Marten's "retention.") Second, the insurance policies provided for a maximum retrospective premium, so that regardless of Marten's actual losses, its retrospective premium was capped.

One court has explained retrospective premiums as follows: "The premiums claimed are, in effect, the insurer's out-of-

291

ten Transport argued, Hartford paid claims and attorney fees out of Marten Transport's own money.[6] Marten Transport indicated that Hartford would experience out-of-pocket losses only on an individual claim that exceeded $250,000, and that the likelihood of that maximum being exceeded on any one worker's compensation claim was exceedingly slim. In fact, none of the claims under Marten Transport's worker's compensation policy had resulted in an award in excess of $250,000.

In response, Hartford argued that it did have a financial interest in every worker's compensation claim that Walther handled under its policies. By way of affidavit it stated: "Hartford had an insurance and financial risk with respect to claims under these policies because (1) the retrospective premium would not include losses for any one occurrence in excess of $250,000 and (2) the retrospective premium was capped pursuant to the insurance agreements." The essence of Hartford's argument was that, although

---

pocket expenses on . . . claims asserted against the [insured] . . . during part of the policy period, plus what amounts to a [percentage] service charge for handling the claims. Thus, when the insurer settled a claim it did so with the insured's money." *Transit Casualty Co. v. Topeka Transp. Co.*, 663 P.2d 308, 309 (Kan. Ct. App. 1983); *see also Insurance Co. of North America v. Binnings Constr. Co.*, 288 So. 2d 359, 361 (La. Ct. App. 1974) (a retrospective rating plan "allow[s] the insureds to be, within modest minimum and maximum limits, self-insurers for whom the insurer handles settlement as well as administration, receiving a commission . . . on the liabilities incurred").

[6] Marten Transport's premium payments were secured by a letter of credit from its bank. Thus, it argues that Hartford did not run the risk that retrospective premiums would go unpaid in the event that Marten Transport experienced financial difficulties.

Marten Transport could be considered to be self-insured up to $250,000 per occurrence, Hartford was still acting as a traditional insurer beyond that limit. In exchange for a portion of the premium paid by Marten Transport, Hartford accepted the risk that any one occurrence would result in damages in excess of $250,000, and that the aggregate of all occurrences would exceed the policy's stated limit.[7]

Based upon these facts, and arguments of counsel, the trial court denied Hartford's motion for disqualification. It determined that no lawyer-client relationship between Walther and Hartford had ever existed. Its formal findings state that Walther represented only Marten Transport in all of the claims and that Walther's appearances for Hartford "were *pro forma* consistent with the demands of the Wisconsin worker's compensation law regarding mandatory insurance coverage." Apparently the trial court concluded that, although Hartford had to be named as a defendant in any worker's compensation action, Hartford did not have any true interest in the matter, as illustrated by the trial court's finding that Hartford never experienced actual financial exposure in any of the actions that Walther handled due to the retrospective premium arrangement. The trial court also found that if Hartford had believed it was at actual financial risk, it could have hired independent counsel.[8]

---

[7] The record is not clear as to how this aggregate limit is calculated.

[8] This finding is contained in the trial court's amended findings. Following a hearing on Hartford's motion to reconsider the order denying the disqualification motion, the trial court amended its earlier finding that Hartford experienced no financial risk in any of the actions where Walther appeared. The trial court's amended finding was that "a potential for monetary

We conclude that the trial court's reasoning ignored the fact that Hartford had an interest in each and every claim under its policies. Even if we were to agree that the parties could predict with a high degree of accuracy whether any one claim would approach the $250,000 retention, the parties could not predict, with that same accuracy, the total number and dollar amount of aggregate claims that may be filed in a given period of time. Because Hartford had an interest in ensuring that the aggregate amount did not exceed the limit beyond which it became liable, and because each individual claim contributed to the aggregate amount, Hartford necessarily had some interest in ensuring that the individual claims did not result in excessive settlements or awards. Given our conclusion that Hartford did have an interest in the matters handled by Walther, we turn to the other facts which are indicative of an attorney-client relationship.

Marten Transport argues that the fact that Walther was not Hartford's attorney is clearly shown by circumstances of the first meeting between Hartford and Walther in April 1989. At the very point where an attorney-client relationship could have formed, Marten Transport argues, Hartford disclaimed any interest in having Walther act as its attorney.

We conclude that Hartford's statement at that meeting, if taken alone, could reasonably lead to the conclusion that it did not want Walther to act as its attorney. Alternatively, Hartford could also have meant only what it said—that because Marten Trans-

---

exposure on the part of [Hartford] existed," but that "[u]pon the existence of actual exposure, [Hartford] could have retained personal counsel other than Walther." This amended finding did not affect the trial court's conclusion that no lawyer-client relationship existed.

port had the right to choose the attorney who would handle the claims, Hartford could not prohibit it from doing so, but at the same time, Hartford wanted to clarify its position that it would accept no blame for any actions of that attorney.

If this meeting were the only evidence of the relationship between Hartford and Walther, we may very well have deferred to the trial court's conclusion that no attorney-client relationship had formed. We have, however, other evidence to consider that compels this court to reach the opposite conclusion.

The parties do not dispute that Walther had an active role in the handling of worker's compensations claims under Hartford's policies. Walther gave legal advice to both Hartford and Marten Transport on the merits of the claims. Walther negotiated settlements, and held itself out to third parties, including claimants, adjudicatory boards, and a United States district court as the attorney for both Marten Transport and Hartford, both of which had an interest in the resolution of the claims. Hartford knew of Walther's actions on its behalf, allowed Walther to continue in this manner, and at no time asserted its desire to have independent counsel represent its interests.

Marten Transport's argument that Walther was not Hartford's attorney leaves this court to wonder, if Walther did not represent Hartford's interests, who did? There is no indication in the record that any officer of Hartford or attorney other than Walther appeared on behalf of Hartford in any of these matters. The trial court's answer to this puzzling question, and one with which Marten Transport agrees, was that Walther's appearance on behalf of Hartford was merely "*pro forma.*" Marten Transport, in essence, asks this court to hold that it is possible for an attorney to appear

before an adjudicatory body in a contested matter, on behalf of a named party, but not be considered the attorney for that party. Such a holding would require this court to conclude that there exist differing levels of representation, with the lowest level being of such a superficial nature that it cannot be considered representation at all. We have found no legal authority for that proposition, and we decline to adopt that rationale.

Finally, Marten Transport argues that Walther could not be acting as attorney for both Marten Transport and Hartford in past and pending worker's compensation claims because there exists an inherent conflict between insurer and insured when the policy incorporates retrospective premiums. Because a commission is charged as a percentage of the retrospective premium, commissions increase as premiums increase. Retrospective premiums, in turn, increase as settlements and awards under the policy increase. Thus, as some courts have noted, there exists an inherent conflict between the interests of the insurance company and the insured because as the insurance company pays out more in claims, the insured must pay more in premiums, and more in commissions to the insurer. *See, e.g., National Sur. Corp. v. Fast Motor Serv.*, 572 N.E.2d 1083, 1087 (Ill. App. Ct. 1991); *Transit Casualty Co. v. Topeka Transp. Co.*, 663 P.2d 308, 309 (Kan. Ct. App. 1983); *Insurance Co. of North America v. Binnings Constr. Co.*, 288 So. 2d 359, 361 (La. Ct. App. 1974); *Transport Indem. Co. v. Dahlen Transp. Inc.*, 161 N.W.2d 546, 548 (Minn. 1968).

We do not discount the importance of this potential conflict of interest between Hartford and Marten Transport. We conclude, however, that the presence of an inherent conflict is more indicative of Walther's

duty to disclose the conflict to the joint clients under
SCR 20:1.7(b)[9] than to whether an attorney-client rela-
tionship in fact existed. *Cf. Corrado Bros., Inc. v. Twin
City Fire Ins. Co.*, 562 A.2d 1188, 1193 (Del. 1989)
(because conflicting interests were involved due to ret-
rospective premium endorsement, attorney chosen by
insurer had the duty to explain to the insured that the
insured had a right to consult independent counsel).

We conclude that the facts of this case can lead to
but one conclusion—Walther was acting as attorney for
both Hartford, as the insurer, and Marten Transport,
as the insured. *See Moritz v. Medical Protective Co.*,
428 F. Supp. 865, 872 (W.D. Wis. 1977) (the relation-
ship of the insurer to the attorney it chooses to
represent the insured is that of client and attorney).
Moreover, the parties all agree that Walther continues
to handle several worker's compensation claims under
the Hartford policy. Thus, because there is no indica-
tion that Walther has terminated its representation of
Hartford, we conclude that Hartford is a current client
within the ambit of SCR 20:1.7.

The only remaining question under SCR 20:1.7(a)
is whether Walther's current representation of Marten

---

[9] SCR 20:1.7(b) provides:

A lawyer shall not represent a client if the representation of that
client may be materially limited by the lawyer's responsibilities to
another client or to a third person, or by the lawyer's own interests,
unless:

(1)   the lawyer reasonably believes the representation will not
be adversely affected; and

(2)   the client consents in writing after consultation. When
representation of multiple clients in a single matter is undertaken,
the consultation shall include explanation of the implications of the
common representation and the advantages and risks involved.

297

Transport is "directly adverse" to Hartford. Marten Transport's allegations in the present case are based, in part, on the very same insurance agreements that Walther handled and continues to handle. There can be no dispute that the current action is "directly adverse" to Hartford. *See* comment to SCR 20:1.7 ("[A] lawyer ordinarily may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated.").

Hartford's motion to disqualify Walther must be granted.

*By the Court.*—Order reversed and cause remanded.