Ronald Fouts, Plaintiff-Appellant,

v.

Breezy Point Condominium Association,
Defendant-Respondent.

Court of Appeals

*No. 2013AP1585. Submitted on briefs January 7, 2014.
—Decided June 17, 2014.*

2014 WI App 77

(Also reported in 851 N.W.2d 845.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kimberly L. Alderman* of *Alderman Law Firm*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Walter R. Stewart* and *Ethan T. Miller* of *W.R. Stewart & Associates, S.C.*, Madison.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. MANGERSON, J. Ronald Fouts appeals an order dismissing his complaint against the Breezy Point Condominium Association and awarding the Association statutory attorney fees. He asserts that, as a director of the Association, he is entitled to review confidential communications between the Association and its attorney regardless of a claim of attorney-client privilege. We conclude the circuit court, in a well-reasoned decision, properly dismissed his complaint and awarded statutory attorney fees. Accordingly, we affirm.

## BACKGROUND

¶ 2. The following facts are undisputed. At all relevant times, Fouts was a member, unit owner, and director of the Association. He sued the Association and/or its members on three occasions prior to 2009. The last occurred in 2008 when Fouts was granted a declaratory judgment authorizing him to examine Association records consisting of invoices for legal services. Fouts' appellate brief asserts the Association has wrongfully paid for the personal legal expenses of other directors and member-owners.

¶ 3. In September 2010, Fouts requested the Association grant him full access to its past and present records, including all attorney-client files, without redaction or claim of privilege. The Association then passed a resolution granting permission for any direc-

tor to review the records of the Association contained in the office of the Association's attorney. Several days later, the Association president clarified directors were only permitted to access records the Association had paid for, the records permitted to be examined were limited to "closed cases," and no copies were to be made.

¶ 4. In late 2010, the Association's attorney reviewed Association files to remove confidential communications, and he provided the redacted files to Fouts. Nothing deemed by the attorney to contain privileged attorney-client communications was made available for review. Counsel took the position that the Association, through its resolution or otherwise, had not specifically informed him it was waiving the attorney-client privilege. Fouts' subsequent requests for the privileged material went unanswered.

¶ 5. Fouts filed the present action on August 20, 2012. He sought a declaratory judgment giving him full access to the Association's records, including "attorney client files of the [A]ssociation without redaction or claim of privilege[.]" Fouts also sought punitive damages as a sanction. The Association answered, labeling Fouts "a serial litigator," asserting it had provided all documents Fouts had a right to inspect, and claiming any withheld documents were protected by attorney-client privilege.

¶ 6. Fouts filed a summary judgment motion, again requesting full access to Association records. Fouts argued he had an absolute right to inspect the records as a director of the Association, and he asserted the Association's attorney had an ethical duty to deliver all client files. The Association responded that Fouts' rights and duties as a director did not trump attorney-

491

client privilege, and any waiver of the privilege had to come from the Association as the sole client, not an individual director.

¶ 7. The court denied Fouts' summary judgment motion in a written decision on March 19, 2013. It identified the relevant legal issues as whether the attorney-client privilege "grant[s] the Association the authority to withhold confidential lawyer-client communications from a current director of the Association[,]" and, if so, whether Fouts could waive that privilege on behalf of the Association. The court, relying on *Lane v. Sharp Packaging Systems, Inc.*, 2002 WI 28, 251 Wis. 2d 68, 640 N.W.2d 788, concluded the Association, acting through the board of directors, has exclusive authority to decide whether individual directors should have access to information covered by the privilege, and as such could withhold confidential communications from a current director. The court noted the record did not contain any indication that the board had waived the privilege, nor did it indicate whether the board of directors had yet made a decision on whether Fouts was entitled to any or all privileged documents.

¶ 8. After the court's decision, the parties stipulated to certain facts in lieu of an evidentiary hearing. The stipulation provides, "On or about February 8, 2012 the plaintiff demanded that the [A]ssociation provide the requested records regardless of the claim of [attorney-client] privilege. The [A]ssociation did not waive the privilege and did not provide the records."

¶ 9. The court approved the stipulation and concluded there were no further facts in dispute. The court stated the "only factual issues remaining [after its March 19 decision] was whether or not the Association waived the lawyer-client privilege, and then still did not provide the requested records." The court determined

492

the stipulation resolved that question, granted summary judgment in favor of the Association, and dismissed Fouts' complaint. It also awarded statutory costs and statutory attorney fees. Fouts appeals.

## DISCUSSION

■

¶ 10. We review a grant of summary judgment de novo. *See Waters by Murphy v. U. S. Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). Summary judgment motions are governed by a well-established methodology. *See Ixonia State Bank v. Schuelke*, 171 Wis. 2d 89, 94, 491 N.W.2d 722 (Ct. App. 1992). In short, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WIS. STAT. § 802.08(2).[1] On appeal, we apply the standards set forth in the statute just as the trial court was to have applied them. *Ixonia State Bank*, 171 Wis. 2d at 94.

¶ 11. As a procedural aside, Fouts argues the court incorrectly granted the Association summary judgment without having a motion before it. However, the "purpose of summary judgment is to avoid trial when there are no issues to be tried." *Id.* Accordingly, "[i]f it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor." WIS. STAT. § 802.08(6). Consequently, we reject Fouts' procedural argument.

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

¶ 12. Further, we concur with the circuit court's assessment of the substantive legal issue in this appeal. In general, a client—which, under WIS. STAT. § 905.03(1)(a), includes a private association—may refuse to disclose confidential communications between the client and its attorney. WIS. STAT. § 905.03(2). Wisconsin subscribes to the "entity rule," which provides that when a lawyer represents an organization, the organization is the client, not the organization's constituents. *See Jesse by Reinecke v. Danforth*, 169 Wis. 2d 229, 239, 485 N.W.2d 63 (1992). The entity rule applies to privileged communications under SCR 20:1.6. *Reinecke*, 169 Wis. 2d at 241. The corporate entity, not the individual constituents, holds the privilege. *Id.* The purpose of the entity rule is to enhance the organizational lawyer's ability to represent the best interests of the organization without automatically having the additional and potentially conflicting burden of representing the organization's constituents. *Id.* at 240.

¶ 13. The issue in this case is whether an association invoking attorney-client privilege may withhold privileged communications from a current board member. The parties agree there is no case directly on point. However, in *Lane*, 251 Wis. 2d 68, the supreme court considered an analogous situation in which a former corporate director sought privileged documents generated during his term.

¶ 14. In that case, Lane, a member of Sharp's board of directors, was terminated and questioned an appraisal of the value of his interest in the business. *Id.*, ¶ 10. During discovery, Lane subpoenaed documents from Sharp's attorney and his firm, including bills and communications between the attorney and Sharp's constituents. *Id.*, ¶ 15. Sharp and the principal owners

responded with a motion for a protective order and to quash the subpoena, arguing the documents were protected by the lawyer-client privilege. *Id.*, ¶ 16. The circuit court agreed with Lane and ordered the production of the requested documents.

¶ 15. On appeal, our supreme court reversed. The court first rejected the notion that Lane's status as a former director allowed him to access otherwise privileged communications. *Id.*, ¶ 33. Citing the entity rule, the court concluded "the lawyer-client privilege belongs to Sharp [the client], and only Sharp can waive the lawyer-client privilege." *Id.* Accordingly, the court held that a former director cannot act on behalf of the client corporation and waive the privilege. *Id.* The court further held that even though the documents were created during Lane's tenure as a director, he was not entitled to them. *Id.*, ¶ 34. The power to waive the privilege rests with the corporation's management, and as a "dissident director," Lane had no authority to pierce or frustrate the attorney-client privilege when that action conflicts with the will of management. *Id.* (citing *Milroy v. Hanson*, 875 F.Supp. 646 (D. Neb. 1995)).

¶ 16. Fouts acknowledges *Lane* cuts against his position, but notes the supreme court explicitly limited its holding to the facts presented and declined to "address, or speculate, on the outcome of any similar situations involving a current member of a board of directors." *Id.*, ¶ 35. However, we conclude *Milroy,* on which the *Lane* court heavily relied, is directly applicable to the question before us.

¶ 17. In *Milroy,* 875 F.Supp. at 647, a director of a closely held Nebraska corporation brought suit against the corporation and the majority shareholders, who were also directors. Milroy, the plaintiff, alleged the majority shareholders violated their fiduciary duties,

wasted corporate assets, and operated an unlawful enterprise. *Id.* The corporation resisted the production of some documents during discovery, raising attorney-client privilege. *Id.* Milroy argued the privilege could not be asserted against him because he was a director of the corporation, and because he had initiated a derivative suit that would presumably benefit the corporation. *Id.* at 648.

¶ 18. The district court rejected both of Milroy's arguments. It first held that Milroy's status as a director did not allow him to circumvent the privilege because a majority of the board had, at least implicitly, determined to assert the privilege on behalf of the corporation. *Id.* "[I]t follows that an individual director is bound by the majority decision and cannot unilaterally waive or otherwise frustrate the corporation's attorney-client privilege if such an action conflicts with the majority decision of the board of directors." *Id.* The court further reasoned that a dissident director is not management and has no authority to frustrate the client corporation's invocation of attorney-client privilege. *Id.* at 649–50. Finally, the court concluded Milroy's suit was brought in his personal capacity and was intended primarily to benefit Milroy, to the detriment of the corporation and remaining stockholders. *Id.* at 652. Accordingly, the court saw no reason to order the production of privileged documents. *Id.*

¶ 19. Here, following *Lane* and *Milroy*, the Association is the client and has the exclusive authority to withhold privileged information from current individual directors. Fouts and the Association have stipulated that the Association has exercised the attorney-client privilege and refused to waive it. The privilege is absolute, unless one or more of the exceptions set out in

496

Wɪs. Sᴛᴀᴛ. § 905.03(4) applies, or it is waived by operation of Wɪs. Sᴛᴀᴛ. § 905.11. *Borgwardt v. Redlin,* 196 Wis. 2d 342, 353, 538 N.W.2d 581 (Ct. App. 1995).

¶ 20. Fouts argues for the first time in his reply brief that the exception for joint clients thwarts the privilege. Under Wɪs. Sᴛᴀᴛ. § 905.03(4)(e), the privilege does not extend to communications "relevant to a matter of common interest between 2 or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients." Fouts reasons that "because the action is between the Association and one of its current directors, both of which are clients of the Association attorney, attorney-client privilege cannot extend to any communications made between any of the Association directors and the Association attorney."

■■

¶ 21. We reject Fouts' argument regarding Wɪs. Sᴛᴀᴛ. § 905.03(4)(e). First, arguments raised for the first time in a reply brief will not be considered. *Roy v. St. Lukes Med. Ctr.,* 2007 WI App 218, ¶ 30 n.6, 305 Wis. 2d 658, 741 N.W.2d 256. Second, Fouts' argument is contrary to the entity rule, under which there is no joint representation because the Association is the only client. *See Reinecke,* 169 Wis. 2d at 239.

¶ 22. Fouts counters that our reliance on *Lane* is misplaced for three reasons. First, he argues he brought suit for the Association's benefit and stands to gain nothing personally from the litigation. Second, he appears to concede the Association could withhold privileged information from a dissident director, but argues a factual dispute exists about whether he can be considered a dissident. Third, he contends he is not adverse to the Association as a matter of law.

¶ 23. First, we observe that Fouts' suit seeks punitive damages against the Association.[2] "Punitive damages are not intended to compensate the plaintiff, but rather are awarded to punish the wrongdoer, and to deter [it] and others from similar conduct." *Kimble v. Land Concepts, Inc.*, 2014 WI 21, ¶ 43, 353 Wis. 2d 377, 845 N.W.2d 395 (quotation omitted). Fouts can hardly argue, then, that the suit is primarily for the Association's benefit, rather than his own. *See Milroy*, 875 F.Supp at 651 (refusing to allow stockholder to pierce attorney-client privilege when stockholder asserts claims primarily to benefit himself, particularly when such claims will undoubtedly harm all other stockholders if successful). This is especially true because Fouts' complaint does not allege any misconduct other than the Association's refusal to disclose privileged information.

¶ 24. Second, given our recitation of Wisconsin law, the circuit court was not required to determine whether Fouts can be classified as a dissident director, and therefore no factual issue was presented. The operative principle here is that the privilege belongs to the Association, and Fouts, as an individual director, has no authority to waive it. To the extent Fouts could have argued an exception other than the joint client exception applies, he has missed his opportunity.[3] *See*

[2] We observe that Fouts' complaint incorrectly frames his request for punitive damages as a separate cause of action. *See Hansen v. Texas Roadhouse, Inc.*, 2013 WI App 2, ¶ 21, 345 Wis. 2d 669, 827 N.W.2d 99 (WI App 2012), *review dismissed*, 2013 WI 22, 346 Wis. 2d 286, 827 N.W.2d 376 ("Punitive damages are a remedy, not a cause of action.").

[3] If indeed individual directors misappropriated Association funds for their own benefit, as Fouts suggests in his brief, the

*State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court will not address undeveloped and inadequately briefed arguments).

¶ 25. Fouts notes that, as a director, he is responsible for ensuring the Association is properly managed. The Association concedes that, as a current director, Fouts has a fiduciary responsibility to perform oversight of the Association. Fouts essentially claims his fiduciary duties as a director trump an assertion of attorney-client privilege.

■

¶ 26. To the extent a public policy analysis is necessary to the issue at hand, we believe the circuit court articulated the appropriate balancing of interests:

> Although the right of a stockholder (or director) to inspect the books of a corporation is positive, full, and complete[, *see State ex rel. Harvey v. Plankinton Arcade Co.*, 182 Wis. 23, 25, 195 N.W. 904 (1923)], no [c]ourt in Wisconsin has ruled on whether or not a current director of an unincorporated association has unfettered access to lawyer-client communications. The Court believes that privileged lawyer-client communications are far different from financial records that are freely accessible to mere stockholders. Whereas to properly evaluate the workings of a corporation by stockholders or directors, financial information is always critical, legal advice given to the organization, may or may not be critical for a director to know to

exception to the attorney-client privilege for documents prepared in furtherance of a crime or fraud might arguably apply, which would require an in camera review by the circuit court. *See* Wis. Stat. § 905.03(4)(a); *Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶¶ 50–51, 55, 251 Wis. 2d 68, 640 N.W.2d 788. However, Fouts' complaint alleges only that he was wrongfully denied access to Association documents; he did not allege any substantive misconduct by other directors.

> fulfill his responsibilities. In fact, if the advice involves an adversarial relationship with one director, its release to that director may be deleterious to the organization.

Accordingly, we conclude Fouts' fiduciary duties do not automatically entitle him to privileged documents.

■

¶ 27. Fouts next argues the circuit court erred because it did not tell him how to gain access to privileged documents. Fouts believes it was the court's responsibility to "clarify the uncertainty" by requiring a privilege log or employing a third-party mediator to challenge and review the files in question. However, as the plaintiff, Fouts was in the driver's seat of the litigation. He requested a blanket order authorizing access to all Association documents without redaction or privilege. If there were documents he believed were wrongfully withheld, it was incumbent upon him to identify them so the court could ultimately determine if they should be produced. Without such a discovery demand, the Association could not respond or provide a privilege log. There was nothing from which the court could determine whether the privilege was properly asserted, and the circuit court was not required to develop a litigation strategy on Fouts' behalf.

¶ 28. Fouts also asserts the public policy and statutory directives codified in WIS. STAT. ch. 703 abrogate the attorney-client privilege under the circumstances of this case. Specifically, he contends he had fiduciary duties to fulfill under that chapter. He also argues the Association president's modification of the Association's resolution was not "approved by an affirmative vote or written consent of at least 75% of the board[,]" in violation of the small condominiums statute, WIS. STAT. § 703.365(3)(d).

¶ 29. We reject Fouts' arguments based on Wis. STAT. ch. 703 for several reasons. First, there is no dispute Fouts has a fiduciary duty to act in the best interests of the Association. Second, the parties stipulated the attorney-client privilege has been asserted and has not been waived. Accordingly, the relevance of the 75% rule embodied in Wis. STAT. § 703.365(3)(d) is unclear. Finally, assuming the statute does have some relevance, Fouts has not shown § 703.365 is applicable. The Association asserts that, at the time the Breezy Point Condominium was declared, it did not qualify as a "small condominium" because it contained more than the maximum number of units allowable at that time. Fouts has not responded to this argument, and therefore concedes the statute does not apply. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (arguments not specifically refuted are deemed conceded).

¶ 30. Notably, Fouts appears to backtrack in his reply brief. He clarifies he "does not maintain that the Association could never have lawfully excluded him from certain association records, only that the required formal decision-making process was not followed." However, he then concedes the facts surrounding the "decision-making process" he challenges "were not put in the record and would therefore be inappropriate to further explore in this appeal." The appellant has the responsibility of ensuring the record on appeal is sufficient to support his or her assertions of error. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26–27, 496 N.W.2d 226 (Ct. App. 1993). When the appellate record is incomplete, we must assume the missing material supports the trial court's ruling. *Id.* at 27. Accordingly, the conceded inadequacy of the appellate record is fatal to Fouts' assertion that an improper protocol was used.

¶ 31. Fouts' final argument is that the circuit court erred in awarding attorney fees. He contends attorney fees are not recoverable in an action for declaratory judgment. Under the Uniform Declaratory Judgments Act, a court may make "such award of costs as may seem equitable and just." WIS. STAT. § 806.04(10). "Costs," for purposes of § 806.04(10), do not include actual attorney fees. *See Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 746–47, 351 N.W.2d 156 (1984).

¶ 32. However, the court did not order actual attorney fees; it awarded statutory attorney fees. Statutory attorney fees, when awarded to the defendant, are computed based on the demands of the complaint. *See* WIS. STAT. §§ 814.03, .04. The awarding of judgment costs under § 814.03 is mandatory, not discretionary. *Taylor v. St. Croix Chippewa Indians of Wis.*, 229 Wis. 2d 688, 696, 599 N.W.2d 924 (Ct. App. 1999). Accordingly, the court did not erroneously exercise its discretion by awarding statutory attorney fees. In any event, Fouts does not reply to the Association's response argument, and therefore concedes the award was proper. *See Charolais Breeding Ranches*, 90 Wis. 2d at 109.

*By the Court.*—Order affirmed.