SECURITY BANK, Plaintiff,

v.

Robert A. KLICKER,† Defendant-Appellant,

S. Kris BANDAL, James R. Allis, Donald A. Johnson, Mark E. Converse, Shirley Martinek Maun, Gary L. Debyl, Ronald C. Morkved, Marcella C. Peterson, Lawrence E. Deneys, Gary Mackenzie, Katherine Engle, Fox River Development Company, Giltedge Enterprises and Papermart Enterprises, Defendants,

William F. MESSERLI, Ross E. Kramer, Joel D. Rath, David R. Kracum, Mark S. Larson, M. Kevin Snell, K. Worner Kissoon, Timothy J. Bauer, d/b/a Messerli & Kramer, f/k/a Messerli, Roe, Balogh & Kramer, R. Thomas Roe and James A. Balogh, Alternates-Defendants-Respondents.

Court of Appeals

*No. 87–0305. Submitted on briefs October 21, 1987.—Decided November 24, 1987.*

(Also reported in 418 N.W.2d 27.)

---

† Petition to review denied.

For defendant-appellant there were briefs by *R. Jeffrey Krill* of *Michael, Best & Friedrich,* of Milwaukee.

For alternates-defendants-respondents, there was a brief by *James P. Brennan,* and *Joseph E. Schubert,* of *Brennan & Collins,* of Milwaukee.

Before Cane, P.J., LaRocque and Eich, JJ.

CANE, P.J.   Robert Klicker appeals the denial of summary judgment. The issue is whether as a matter of law an attorney representing a general partnership

must also be considered the attorney for each of the individual general partners. We conclude that whether an attorney representing a general partnership also represents the partners in their individual capacity raises an issue of fact. Because the record establishes a factual dispute, we affirm.

This action arises out of the purchase of two office buildings. The buildings were purchased on short-term land contracts by two general partnerships known as Giltedge Enterprises and Papermart Enterprises. Each partnership took title to one office building bearing its name. Klicker was a general partner in both partnerships.

The transactions began in July, 1982, when another partner, Shirley Maun, requested Attorney Snell to assist the partnerships in reviewing an offer to purchase that the partnerships intended to submit to a group known as the "Germans," the European owners of the office buildings.

The partnerships originally intended to purchase real estate consisting of a four-building complex, including a hotel, a restaurant, and two office buildings. Ultimately, the partnerships decided to purchase only the Giltedge and the Papermart office buildings.

From the inception of the transaction to its closing in July of 1983, Attorney Snell represented the Giltedge and Papermart partnerships. Snell's duties included reviewing the initial offer to purchase, negotiating with the sellers and with various lenders, and drafting all the documentation related to the creation, management, and operation of the two general partnerships. Snell primarily dealt with three general partners, including Maun, Ronald Morkved, and Gary Debyl.

An $800,000 loan made jointly to Giltedge and Papermart by the Security Bank of Appleton partially financed the purchase. Besides the loan agreement executed by the partnerships, each individual partner executed a personal guaranty. Less than four months after closing, Giltedge and Papermart had both defaulted on virtually all of the obligations incurred in connection with the purchase, including the land contract with the sellers and the loan from Security Bank.

In January, 1984, Security Bank filed an action against all of the parties involved in the transaction, including Klicker. In August, 1985, the bank filed an amended complaint joining Snell and his law firm as "alternative defendants." Subsequently, Klicker filed a cross-claim against the alternative defendants, claiming that as attorney for the Giltedge and Papermart general partnerships, Snell also represented each of the individual partners as a matter of law. Thus, he alleged that Snell had committed professional malpractice by representing parties to the transaction whose interests were in conflict with those of Klicker. Accordingly, Klicker sought indemnity from Snell for all amounts for which he would be held liable to Security Bank at trial.

Klicker brought a motion for partial summary judgment and requested the court to rule as a matter of law that an attorney-client relationship existed between himself and Snell with respect to the transaction. The court ruled that a question of fact existed with respect to this issue and denied Klicker's motion.

The matter was tried to a jury. Klicker admitted that he did not retain Attorney Snell to represent him in any relevant transaction. Klicker also testified that he was not relying on Snell as his attorney. Klicker

stated that he could recall neither meeting Snell nor corresponding with him. Klicker was unaware that the partnership retained an attorney to assist in the transactions.

Snell testified that at no time did Klicker indicate that he believed Snell was his attorney. Snell further testified that he knew Klicker had separate legal counsel. Snell considered himself to represent the partnerships, and not the individual partners.

The jury verdict found Klicker liable to Security Bank for the amount demanded in the complaint and absolved Snell of any liability to the bank. The verdict also found that Snell did not represent Klicker individually with respect to the transaction.

Klicker filed motions after verdict with the trial court. Among other things, Klicker asked the trial court to change the jury's verdict and hold that an attorney-client relationship existed between himself and Snell. Klicker also asked for a new trial. These motions were denied. Klicker argues on appeal that the trial court erred in denying the partial summary judgment motion.

When reviewing a summary judgment decision, this court must apply the standards of sec. 802.08(2), Stats., in the same manner as the trial court. On summary judgment, the moving party has the burden to establish the absence of any genuine issue of fact. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980). A summary judgment should not be granted unless the moving party demonstrates entitlement to it with such clarity as to leave no room for controversy. *Id.*

In a legal malpractice action for negligence or for violation of duty, the claimant has the initial burden of proving the existence of an attorney-client relationship. *Lewandowski v. Continental Cas. Co.,* 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979). In general, the relationship of attorney and client is one of agency resting upon contract, and the rules governing contract formation determine whether such a relationship has been created. The contract may be express, yet formality is not essential. Since representation is often informal, the relationship may be implied from the words and actions of the parties. *See Hashemi v. Shack,* 609 F. Supp. 391, 393 (S.D. N.Y. 1984).

Klicker concedes that no express relationship existed between himself and Snell. Indeed, Klicker admits that he neither sought out Snell's advice nor relied on Snell as his attorney. Klicker nevertheless insists that an attorney-client relationship must be implied as a matter of law. Klicker principally rests his argument on the aggregate theory of partnership.

Klicker asserts that except for procedural and conveyancing purposes, a general partnership is not an entity separate and distinct from the individual partners but, rather, an aggregation of each partner's individual rights and liabilities. He reasons that because there is no separate entity, an attorney representing a general partnership as a matter of law represents each individual partner. We disagree.

Klicker recognizes that where an attorney represents a corporation, the attorney's client is generally the corporation and not the directors, officers, or shareholders. A corporation is treated as an entity separate from its stockholders under ordinary circumstances. *Jonas v. State,* 19 Wis. 2d 638, 644, 121

N.W.2d 235, 238 (1963). Wisconsin Sup. Ct. R. 20.23(3)(e) (1986) (adopting the Code of Professional Responsibilities Ethical Consideration 5–18) provides:

> (e) A lawyer employed or retained by a corporation *or similar entity* owes his or her allegiance to the entity and not to a stockholder, director, officer, employee, representative *or other person connected with the entity.* In advising the entity, a lawyer should keep paramount its interests and his or her professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative or other person connected with the entity to represent him or her in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present. (Emphasis supplied.)

In an analogous situation, a limited partnership has been held to be an entity "similar" to a corporation for purposes of determining attorney-client relationships. In *Quintel Corp. v. Citibank,* 589 F. Supp. 1235, 1241–42 (S.D. N.Y. 1984), the court declined to hold that a limited partner is automatically a client of the attorney representing the general partners or even the limited partnership, in the absence of any affirmative assumption of duty by the attorney. The court reasoned that to do so would ignore Ethical Consideration 5–18, which specifically defines the attorney's allegiance to the entity that retained him rather than to any person connected with the entity. *Quintel,* 589 F. Supp. at 1242.

Klicker argues, however, that while a corporation and a limited partnership are "similar entities," a general partnership is not. Both the corporation and the limited partnerships are separate entities with substantive rights and liabilities distinct from their respective shareholders and limited partners. In contrast, a general partnership is but an aggregation of the general partners' rights and liabilities. Thus, Klicker contends that a general partnership is under no circumstances "similar" to a corporation for purposes of determining attorney-client relationships.

We are not persuaded. It does not follow that an attorney-client relationship exists between each individual partner and the attorney representing the partnership as a matter of law solely because the aggregate theory is generally utilized in certain regards concerning the rights and liabilities of general partners. We acknowledge that, generally speaking, Wisconsin has regarded a partnership as an aggregate of the individuals who compose it for substantive purposes. *See, e.g., Candler v. Hardware Deal. Mut. Ins. Co.,* 57 Wis. 2d 85, 88–89, 203 N.W.2d 659, 661 (1973).

However, a danger exists in unquestioning acceptance and application of potentially deceptive generalities. Although the aggregate approach to partnerships is generally followed regarding substantive rights and liabilities, we conclude that for purposes of determining attorney-client relationships, it cannot and should not be announced as an absolute rule of law.

Accordingly, a partnership may be considered a legal entity if the parties dealing with it treat it as one. If it should appear from the words and actions of

the parties that the partnership was treated and dealt with as an entity, separate and distinct from the individual partners composing it, the intent of the parties must be given effect.

We decline to hold on the basis of generalities that Snell represented Klicker individually as a matter of law. Absolute application of such an unyielding rule would disregard facts and circumstances raising an inference that the individual treated the partnership as an entity separate from its members. This is particularly illustrative in the present case. By Klicker's own testimony, he did not retain Snell as his attorney. He neither sought out Snell's advice nor relied upon him. Significantly, Klicker at no time indicated he believed Snell represented him in his individual capacity. Klicker's suggestion that Snell was automatically his agent by virtue of representing the partnership is therefore critically undercut by his manifestation of contrary intent.

Finally, we note that cases in related contexts undermine Klicker's contention. For instance, an attorney for an estate is not automatically the attorney for the beneficiaries. *See Estate of Nuyen,* 443 N.E.2d 1099, 1103–04 (Ill. App. 1982). Similarly, an attorney for a trust is not automatically the attorney for each trust beneficiary. In *Lasky, Haas, Cohler & Munter v. Superior Court,* 218 Cal. Rptr. 205, 218, 172 Cal. App. 3d 264, 285 (1985), the court stated in reference to establishing an attorney-client relationship that "the contractual intent and conduct of the parties are critical to the formation of such relationship."

Furthermore, an attorney who is handling a labor grievance on behalf of a labor union as a part of the

collective bargaining process is not considered the attorney for each individual member of the union as a matter of law. In *Peterson v. Kennedy,* 771 F.2d 1244, 1258–59 (9th Cir. 1985), the court based its reasoning on the practical realities of current labor-management relations, and stated:

> [The union member] views the union attorney as an arm of his union rather than as an individual he has chosen as his lawyer. In fact, it is not uncommon for the union member to be completely unaware, at least prior to the arbitration hearing, of who on the union's staff is actually handling his grievance.

Similarly, we feel that among businessmen, a practical distinction may be made between the partnership and the members who compose it. The individual partners may view the partnership as a separate entity. To hold an attorney responsible for representation of the individual partners under these circumstances would be contrary to practical reality as evidenced by the conduct of the parties.

All of these considerations lead us to reject Klicker's assertion that Snell represented him individually as a matter of law. We conclude that whether an attorney-client relationship existed between Snell and Klicker presented a material issue of fact, and the motion for summary judgment was thus properly denied.

*By the Court.*—Judgment and order affirmed.