MARTEN TRANSPORT, LTD., a domestic corporation,
Plaintiff-Respondent-Petitioner,

v.

HARTFORD SPECIALTY CO., a foreign corporation,
Hartford Fire Insurance Co., a foreign corporation,
Twin City Fire Insurance Co., a foreign corporation,
Hartford Accident and Indemnity Co., a foreign
corporation, Hartford Insurance Co. of Illinois, a
foreign corporation, Hartford Insurance Co. of the
Southeast, a foreign corporation, Hartford Insurance
Co. of the Midwest, a foreign corporation, Hartford
Underwriters Insurance Co., a foreign corporation and
Hartford Casualty Insurance Co., a foreign corpora-
tion, Defendants-Appellants.†

Supreme Court

*No. 92-1416. Oral argument September 8, 1994.—Decided
June 19, 1995.*

(Also reported in 533 N.W.2d 452.)

†Motion for Reconsideration denied September 19, 1995.

1

4

5

For the plaintiff-respondent-petitioner there were briefs by *Christopher D. Walther, Karla A. Walther, Michael K. McChrystal* and *Christopher D. Walther & Associates, S.C.,* Milwaukee and oral argument by *Christopher D. Walther.*

For the defendants-appellants there was a brief by *Larry J. Britton* and *Vlasak, Rosenbaum & Britton, S.C.,* Milwaukee and *Thomas P. Luning, Robert D. Campbell* and *Schiff, Hardin & Waite,* Chicago and oral argument by *Robert D. Campbell.*

JANINE P. GESKE, J. This is a review of a published decision of the court of appeals, *Marten Transp. Ltd. v. Hartford Specialty Co.,* 180 Wis. 2d 285, 509 N.W.2d 106 (Ct. App. 1993), which reversed a nonfinal order of the circuit court for Milwaukee County, William D. Gardner, Circuit Judge. The circuit court denied a motion of defendants Hartford Specialty Co., et al. (Hartford) to disqualify the law firm of Christopher D. Walther & Associates, S.C. (the Walther firm) as attorneys for plaintiff Marten Transport Ltd. (Marten).

The issue before this court is whether the circuit court erroneously exercised its discretion when it concluded that an attorney-client relationship did not exist between the Walther firm and Hartford and denied Hartford's motion to disqualify the Walther firm as counsel for Marten. We conclude that the cir-

8

cuit court did not erroneously exercise its discretion. Accordingly, Wisconsin Supreme Court Rules (SCR) 20:1.7 and 20:1.9 cannot be invoked to disqualify the Walther firm from further representation of Marten.[1]

## I.

Numerous facts in this case are undisputed. Marten retained the Walther firm in 1985, approximately two years before it purchased insurance from Hartford.

---

[1] SCR 20:1.7 provides as follows:

**Conflict of interest: general rule**

 (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

 (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

 (2) each client consents in writing after consultation.

 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

 (1) the lawyer reasonably believes the representation will not be adversely affected; and

 (2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

 SCR 20:1.9 provides:

**Conflict of interest: former client**

A lawyer who has formerly represented a client in a matter shall not:

 (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation; or

 (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

9

From July 1987 through December 1989, Hartford insured Marten under general liability, auto liability, and worker's compensation policies. Each of the policies had deductibles of $250,000 per claim. The premiums for general liability and worker's compensation were calculated retrospectively, after losses during the policy period were incurred, and based upon the insured's actual covered loss experience during the policy period.[2] Marten's retrospective policy provided for a maximum retrospective premium. Further, under a retrospectively rated policy, claims are paid with the insured's money, allowing a company such as Marten to self-insure within certain dollar limits, while paying a commission to the insurer to settle and administer claims. In this case, Hartford provided such claims handling and administrative services to Marten.

---

[2] Ordinarily, insurance premiums are calculated prospectively, that is, they are based upon an actuarial projection of the risk of loss before any loss is actually incurred. A retrospective premium typically has two components: a basic premium and a conversion loss factor. The basic premium is that portion of the standard premium which is set aside to cover the insurer's expenses and profit. Payments and reserves on losses incurred by the insured during the policy period are then multiplied by a loss conversion factor to cover the expenses and profit of the third-party administrator of services for the insurer. The two sums are combined and modified by additional factors in order to account for premium taxes. The final sum is the premium paid by the insured. *See* J. Long & D. Gregg, *Property and Liability Insurance Handbook* 540 (1965); *see also* Affidavit of Hartford employee Mary Rossetti, Unit Director, Special Accounts Insurance. The amount of the premium, according to this system, is therefore dependent upon (a) the amounts paid to settle claims under the policy and (b) the amounts set aside as reserves to pay claims under the policy.

In 1989, Marten informed Hartford that the Walther firm would be acting as its general litigation counsel, defending Marten against worker's compensation claims brought under the Hartford policies. Hartford initially objected to this arrangement because: (a) the Walther firm was not on Hartford's list of approved attorneys; (b) under its insurance contracts with Marten, Hartford agreed to defend Marten against any claim, proceeding, or suit against it for benefits payable by the insurance; (c) Hartford's obligation to defend included retaining or employing attorneys in the name of Hartford or Marten; and (d) in addition to the obligation to investigate, defend and settle claims, the insurance contracts obligated Hartford to pay any benefits required of Marten by the worker's compensation law. Ultimately, Hartford assented to Marten's use of the Walther firm on worker's compensation claims. All legal fees incurred for work done by the Walther firm were paid by Marten.

The Walther firm, acting as counsel for Marten, commenced an action against Hartford in December 1991, alleging negligence and breach of contract in the administration and adjustment of worker's compensation claims under the insurance contracts between Marten and Hartford.[3] On February 14, 1992, Hartford filed a motion to disqualify the Walther firm under SCR 20:1.7 and SCR 20:1.9, on the grounds that the Walther firm previously represented and continued to

---

[3] In its complaint, Marten alleges that Hartford was negligent in the performance of its duties as Marten's agent. Specifically, Marten claims that Hartford negligently trained and supervised insurance adjusters employed to administer and adjust claims brought against Marten under the worker's compensation policy, resulting in financial damages and loss.

11

represent both Marten and Hartford. Marten responded by arguing that no attorney-client relationship ever existed between the Walther firm and Hartford or, in the alternative, that the representation was so limited in scope that it did not give rise to a conflict of interest for the Walther firm.

The circuit court denied the motion and found that Hartford was at all times aware that an attorney-client relationship existed between Marten and the Walther firm and that appearances entered by the Walther firm on behalf of Hartford were *pro forma* and consistent with the demands of Wisconsin's worker's compensation law regarding mandatory insurance coverage. Consequently, according to the circuit court, no attorney-client relationship existed between the Walther firm and Hartford.

In reversing the decision of the circuit court, the court of appeals concluded that "the undisputed facts lead to the necessary conclusion that an attorney-client relationship exists between Hartford and Walther . . . [requiring] Walther's disqualification . . . under [Wisconsin Supreme Court Rule] 20:1.7." *Marten,* 180 Wis. 2d at 288. The court of appeals decision was based principally upon the following facts: (a) the Walther firm made joint appearances on behalf of Marten and Hartford; (b) the Walther firm gave legal advice to both Marten and Hartford regarding the merits of claims brought against them; (c) the Walther firm negotiated settlements on claims brought against Marten and Hartford; (d) the Walther firm represented to third parties and claimants that it served as counsel for Marten and Hartford; and (e) Hartford had a financial interest in every worker's compensation claim brought against Marten.

For the reasons set forth below, this court now reverses the decision of the court of appeals.

## II.

Circuit courts possess "broad discretion" in determining whether an attorney should be disqualified in a given case. Motions to disqualify are reviewed under the erroneous exercise of discretion standard, and, accordingly, the scope of appellate review is limited. *Jesse v. Danforth,* 169 Wis. 2d 229, 245–46, 485 N.W.2d 63 (1992). The court will reverse a discretionary decision of the circuit court when the exercise of discretion is based on an error of law. *Id.* at 246. Where the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is consistent with applicable law and one a reasonable judge could reach, the court will affirm the decision even if it is not one with which we ourselves would agree. *Shuput v. Lauer,* 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982); *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981); *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).

It is agreed that the Walther firm is the attorney for Marten. The relationship of attorney and client is one of agency. *Security Bank v. Klicker,* 142 Wis. 2d 289, 295, 418 N.W.2d 27 (Ct. App. 1987).[4] The *Restatement (Second) of Agency* § 1(1) (1958) defines "agency" as "the fiduciary relation which results from the manifestation of consent by one person to another that the

---

[4] Attorneys are agents of their clients, although as to their physical activities they are independent contractors. *Restatement (Second) of Agency* § 1, cmt. e on sub. (3) (1958).

13

other shall act on his behalf and subject to his control, and consent by the other so to act."

Whether an attorney-client relationship was created between the Walther firm and Hartford rests on the intent of the parties. The intentions of the parties are questions of fact for the fact finder. We therefore look to the findings of the circuit court and will accept those findings unless they are clearly erroneous. *See* § 805.17(2), Stats.

In denying Hartford's motion, the circuit court made the following findings of fact:

> 1. No client-lawyer relationship exits [sic], or ever has existed between [the Walther firm] and any of the [Hartford] defendants.
> 2. The relationship that does exist between [the Walther firm] and [Hartford] does not merit disqualification of [the Walther firm] as attorneys of record for [Marten] in this matter.
> 3. [The Walther firm] has been attorney for [Marten] for many years.
> 4. [Hartford] knew of the relationship between [Marten] and [the Walther firm].
> 5. [Hartford] understood the role of [the Walther firm] as attorney for [Marten] in worker's compensation matters despite the fact that some individual employees of [Hartford] did not fully understand the relationship between [Marten] and [the Walther firm] according to their affidavits on file.[5]
> 6. In those instances where [the Walther firm] entered an appearance as attorney for Hartford, such appearances were *pro forma* consistent

---

[5] Hartford submitted a series of affidavits by various employees who expressed the belief that the Walther firm acted as counsel for Hartford.

14

with the demands of Wisconsin worker's compensation law regarding mandatory insurance coverage.

7. [The Walther firm] has always represented [Marten] in matters other than worker's compensation.

8. [Hartford's] role was as an insurer for [Marten] and administrator of the worker's compensation claims filed against [Marten].

9. In none of the cases which this Court reviewed which referred to the role of [the Walther firm] in Hartford's relationship were any of the [Hartford] defendants at any monetary risk either because of the deductible retained by [Marten] or because of the premium arrangements between [Marten] and [Hartford]. In none of those instances [was Hartford] really exposed.

10. [The Walther firm] was merely fulfilling a position for [Hartford] and not establishing any client-lawyer relationship.

11. The fees of [the Walther firm] were always paid with the funds of [Marten]. Regardless of where the funds actually were paid out, they were the funds of [Marten] because of the premium arrangements between [Marten] and [Hartford] and the withholding or deductible portion of the worker's compensation coverage.

12. It is absolutely clear [the Walther firm] was always representing the interests of [Marten].

13. As to the issue of whether any member of [the Walther firm] will be a material witness, any evidence that will be sought by [Hartford] will be attainable from other representatives of [Marten] without invading [the Walther firm] or its relationship with [Marten].[6]

---

[6] In his affidavit in opposition to the motion to disqualify, Attorney Walther stated that he would not be a witness in this case. Hartford never contested that assertion in its affidavits.

14. [The Walther firm] is uniquely qualified to represent the interests of [Marten] in this matter.

The circuit court granted Hartford's motion for reconsideration and made the following findings of fact:

1. Where [Hartford] was an additional party in interest with [Marten] and [the Walther firm] appeared for both parties, a potential for monetary exposure on the part of [Hartford] existed.

2. Upon the existence of actual exposure, [Hartford] could have retained personal counsel other than [the Walther firm].

The circuit court stated, however, that the variance with its previous findings of fact did not affect its original conclusion that no attorney-client relationship exists or existed between the Walther firm and Hartford, since the core quality of confidentiality was not present.

Implicit in the findings of fact set forth above is the circuit court's conclusion that the Walther firm did not intend to create an attorney-client relationship with Hartford and that Hartford understood the Walther firm to be Marten's attorney in worker's compensation cases, not its attorney. According to the circuit court's findings, Hartford's role was as an administrator of the worker's compensation claims filed against Marten; the Walther firm was, to use the terminology of the circuit court's findings, "merely fulfilling a position" for Hartford and not acting as Hartford's attorney.

■

We conclude that the record supports the circuit court's findings of fact about the intentions of the parties and that the circuit court reasoned its way to a

rational, legally sound conclusion consistent with applicable law.

Furthermore, the record supports the conclusion that the relationship between the Walther firm and Hartford was derived from the relationship each had with Marten. The Walther firm was Marten's attorney (an agent of Marten). Because Marten essentially was self-insured, Hartford, in functioning primarily as a claims administrator for Marten, also acted as an agent for Marten. Consequently, because both Hartford and the Walther firm were agents authorized by Marten to act on Marten's behalf, the relationship between Hartford and the Walther firm was one of co-agency.[7]

---

[7] The record also evidences that Marten perceived the creation of a co-agency relationship between the Walther firm and Hartford, rather than an attorney-client relationship. In late February 1989, Marten wrote to Hartford, explaining that Marten retained the Walther firm as legal counsel. The letter states that "[the Walther firm] will be working closely with our company as well as The Hartford in our efforts to more aggressively handle our worker's compensation exposure." Another letter from Marten to Hartford states that Marten's retention of the Walther firm "[h]opefully . . . will aid in the development of a 'team' approach toward worker's compensation loss control between Hartford, [the Walther firm] and Marten Transport, LTD."

Attorney Walther requested an ethics opinion on the Walther firm's representation of Marten in the current action from Professor Michael K. McChrystal, the reporter for Wisconsin's *Rules of Professional Conduct for Attorneys*. Professor McChrystal characterized the relationship between Hartford and the Walther firm as follows: "Your firm and The Hartford were both agents of Marten Transport, and, in this connection, you frequently worked together. The Hartford, your co-agent,

The co-agency relationship between Hartford and the Walther firm is significantly different from the relationship between an insurer and a defense attorney fostered by a classic "tripartite" insurance scheme. In a typical tripartite insurance relationship involving an insurer, the insured, and the insurance defense attorney, the insurer has a duty to retain and pay for an attorney to represent the policyholder/insured when the insured is sued by a third party. *See* Randall Riopelle, Note, *When May an Insurer Fire Counsel Hired To Represent the Insured?*, 7 Geo. J. Legal Ethics 247 (1993). As such, the insurer maintains the right to control the defense, the settlement of a claim, and the payment of a claim within policy limits. Instead, because of the agency relationship between Hartford and Marten, the insured (Marten) selected the Walther firm to represent its interests in worker's compensation claims and paid its fees.[8] This scheme rendered Marten and the Walther firm co-agents, both working for the benefit of Marten.

Hartford, echoing the decision of the court of appeals, presents several arguments in support of its contention that the Walther firm and Hartford had an

---

now seeks your disqualification . . . on the basis that, by virtue of your cooperative service to your common principal, The Hartford became your client as well as your co-agent."

[8] Contrary to the conclusion drawn in the concurring opinion, a typical tripartite relationship did not exist here. No one in the Walther firm can be characterized as an insurance defense attorney according to the facts of this case, because no one in that firm was ever retained or paid by Hartford to defend Marten on a worker's compensation claim. Absent the tripartite relationship, the single-representation rule has no application in this case.

attorney-client relationship. Hartford first maintains that lawyers from the Walther firm appeared on behalf of Hartford before adjudicatory bodies in contested worker's compensation claims. Second, the Walther firm, according to Hartford, provided Hartford with legal advice concerning pending worker's compensation claims. Third, Hartford argues that the Walther firm rendered assistance in settling those claims. Fourth, Hartford maintains that it was always at financial risk with respect to the worker's compensation claims against Marten and Hartford. Fifth, Hartford asserts that lawyers from the Walther firm held themselves out to third parties as lawyers for Hartford. Sixth, Hartford contends that Hartford employees understood the Walther firm to be representing Hartford's interests in these worker's compensation matters. Finally, Hartford argues that the Walther firm has presented no evidence that the firm informed Hartford that Hartford could not rely on the Walther firm to act as its attorney. We address these arguments in turn.

The circuit court found, and Marten does not dispute, that the Walther firm entered appearances on behalf of Hartford in conjunction with the firm's representation of Marten. The circuit court characterized these appearances as *pro forma,* consistent with the worker's compensation law, and concluded that the Walther firm was always representing the interests of Marten. We cannot say that the circuit court's reasoning or conclusion is inconsistent with applicable law or one that a reasonable judge could not reach.

Most employers are required by statute to obtain insurance to cover worker's compensation claims. § 102.28(2), Stats. (1991–92). The insurance carriers are deemed a party in interest in worker's compensa-

19

tion claims arising under their policies. § 102.17(1)(a), Stats. (1991–92). Furthermore, an employee entitled to worker's compensation may enforce the liability of the insurance company which insured the claimant's employer. § 102.30(4), Stats. (1991–92). The circuit court concluded that the Walther firm's appearances on behalf of Marten and Hartford were not dispositive of whether there was an attorney-client relationship between the Walther firm and Hartford, but were required under § 102.28(2).

Had Hartford not filed appearances in the worker's compensation proceedings in which it was named as Marten's insurer, it could have been subject to default judgments. Given the self-insured nature of the agreement between Hartford and Marten, it is highly probable that a default judgment against Hartford would have resulted in litigation between Marten and Hartford to determine whether payment of the default judgment should be made with Marten's funds. Accordingly, it was not an erroneous exercise of discretion for the circuit court to conclude that these appearances did not establish an attorney-client relationship between the Walther firm and Hartford. As the circuit court recognized, the Walther firm always represented Marten's interests. Accordingly, when the Walther firm entered appearances on behalf of Hartford, it did so as Marten's agent to protect Marten's interests, not as Hartford's attorney.

Hartford's second argument, that the Walther firm rendered legal advice to Hartford concerning worker's compensation claims against Marten and Hartford, was not accepted by the circuit court. To illustrate the Walther firm's legal advice, Hartford directs the court's attention to four letters sent from the Walther firm to

Hartford employees regarding worker's compensation claims against Marten and Hartford and to the affidavits of at least two Hartford employees. The four letters recommend dispositions of claims, including amounts that should be paid to the claimant, if any. For those recommending payment, none of the amounts meet or surpass Marten's deductible. Furthermore, the letters from the Walther firm to Hartford were all copied to Marten employees and thus could not have contained confidential information.

Similarly, the affidavits do not necessarily support the finding of an attorney-client relationship based on what Hartford employees characterize as legal advice. Communication between the Walther firm and Hartford employees, in which the Walther firm suggests tactics or dispositions beneficial to Marten's interests, is consistent with the conclusion that Hartford and the Walther firm were both agents of Marten. Again the circuit court has considered the facts of record and has reasoned its way to a rational, legally sound conclusion.

Third, the record supports Hartford's argument that the Walther firm rendered assistance in settling worker's compensation claims against Marten and Hartford. Hartford points to three "compromise agreements" filed by the Walther firm with the Department of Industry, Labor and Human Relations Worker's Compensation Division. Because these agreements all pertain to Marten and Hartford, the role of the Walther firm in reaching them is consistent with its role as Marten's agent, not Hartford's. We therefore conclude that the circuit court's reasoning that these facts do not

21

render the Walther firm the attorney for Hartford is not an erroneous exercise of discretion.

In its fourth argument, Hartford claims that § 102.30(4), Stats. (1991–92), as well as the nature of its policy with Marten; exposed Hartford to risk with every claim against it and Marten. Hartford claims that it was potentially liable under § 102.30(4) for every dollar of an award to a worker's compensation claimant. This section does provide that an employer's worker's compensation insurer is liable for compensation awards. The following subsection, however, § 102.30(5), clarifies that as between the insurer and the insured employer, payment to the employee is subject to the conditions of the policy. Accordingly, Hartford was not liable for the first $250,000 of every claim, the amount of Marten's deductible.

Hartford also declares that its policy with Marten left it open to financial risk because losses that exceeded Marten's deductible could not be factored into the retrospective premium, and the retrospective premium was capped. The circuit court rationally concluded that, regardless of a potential for monetary exposure on the part of Hartford, no attorney-client relationship existed.

Fifth, Hartford asserts that lawyers from the Walther firm held themselves out to third parties as lawyers for Hartford. Hartford presents 27 letters sent by lawyers from the Walther firm to worker's compensation claimants, their lawyers and doctors and others involved in the cases, which state that the Walther firm represents Marten and Hartford.

The Walther firm's correspondence with parties associated with worker's compensation claims against Marten and Hartford supports the circuit court's find-

22

ing that "it is absolutely clear" that the Walther firm "was always representing the interests of Marten." The circuit court's conclusion that by virtue of Wisconsin's worker's compensation law, the Walther firm's representation of Hartford was ancillary to the firm's representation of Marten or, as the circuit court stated, *pro forma,* is reasonable. It was Marten which bore a significant amount of the risk of liability in these claims, not Hartford.

The relationship between the Walther firm and Hartford is at issue here, not the relationship between the Walther firm and an adjudicative body or third persons. This case does not involve the power of an adjudicative body or rights of third persons against Marten, Hartford, or the Walther firm with regard to the Walther firm's representation that it was Hartford's attorney.[9] Accordingly, we conclude that the circuit court's reasoning that the Walther firm's representation to third parties in Marten's worker's compensation cases that it was representing both Marten and Hartford does not render Hartford a client of the Walther firm. The circuit court's decision comports with agency law and was not an erroneous exercise of discretion.

Hartford's sixth contention, that Hartford employees understood the Walther firm to be representing Hartford's interests in worker's compensation claims, is intended to prove the existence of an attorney-client

---

[9] Third parties may have rights against Hartford or Marten if they relied on the Walther firm's representation that they represented Hartford. Again, however, the focus of this case is Hartford's understanding of its relationship with the Walther firm, not the perception of third parties.

relationship through a client's reasonable perception. Hartford points to the affidavits of seven Hartford employees in an attempt to prove that Hartford perceived that it was a client of the Walther firm. Each affidavit states that it was the employee's understanding that the Walther firm, as Hartford's attorney, would represent Hartford's interests. The affidavits do not offer supporting facts to justify this "perception" of Hartford's employees. The circuit court concluded that Hartford understood the role of the Walther firm as attorney for Marten in worker's compensation matters despite the fact that some individual employees of Hartford did not fully understand the relationship between Marten and the Walther firm. These findings and reasons cannot be declared erroneous.

Finally, we are not persuaded by Hartford's contention that Marten failed to disprove the existence of an attorney-client relationship between the Walther firm and Hartford. Hartford misses the point of the current action. The burden is on Hartford, the petitioner, to prove the existence of an attorney-client relationship, not on Marten to prove the absence of such a relationship.

Hartford, despite alleging that the Walther firm acted as its legal representative for almost two and one-half years, does not produce any express agreement whereby the Walther firm consented to represent Hartford. Instead, Hartford relies primarily on several pleadings filed by the Walther firm on behalf of Marten and Hartford, three compromise agreements, four letters from the Walther firm to Hartford, twenty-seven letters to persons involved in worker's compensation claims against Marten and Hartford, and the affidavits of seven Hartford employees. All the evidence proffered by Hartford to prove an attorney-client relationship

24

involves only worker's compensation claims of Marten employees, for which Marten was significantly, if not entirely, liable under the retrospectively rated policy with a high deductible that it carried with Hartford.

We need only decide whether, under the facts of this case as found by the circuit court, the circuit court acted reasonably in concluding that the Walther firm's dealings with Hartford do not constitute an attorney-client relationship and that the Walther firm is not disqualified in this case. We need not determine whether this court or any other court would have exercised its discretion, in contrast with the circuit court, to disqualify the Walther firm. The record supports the circuit court's reasoning that both the Walther firm and Hartford rendered services for the benefit of Marten, a common principal.

Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in concluding that Hartford failed to meet its burden of proving the existence of an attorney-client relationship between Hartford and the Walther firm and that the Walther firm was not disqualified. We reverse the decision of the court of appeals and remand the cause to the circuit court with directions to reinstate Christopher D. Walther & Associates, S.C. as attorneys of record for Marten Transport Ltd.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

STEINMETZ, J. *(concurring)*. I agree with the majority as to the result of this case, but I disagree with its reasoning. The issue in this case is whether an

25

attorney-client relationship has ever existed between Attorney Walther and Hartford. I would adopt the single representation rule, and, applying that rule, I would hold that under the facts of this case, no attorney-client relationship has ever existed between Attorney Walther and Hartford. In so holding, however, I would note that the facts of this case do not implicate the direct action statute; this is not a direct action lawsuit. *See* sec. 632.24, Stats.

I disagree with the majority's opinion primarily because it uses agency law to define the relationship between Attorney Walther and Marten. I am also concerned about the effect that this application of agency law will have on attorney-client relationships and on normal principal-agent relationships.

Despite attempts by the majority to characterize this case as "unique," it nonetheless involves a tripartite relationship between an insurer, an insured, and an insurance defense attorney. Many courts,[1] as well

___

[1] Eleven jurisdictions have apparently adopted the single representation rule. *See Continental Casualty Co. v. Pullman, Conley, Bradley & Reeves,* 929 F.2d 103, 108 (2d Cir. 1991) ("It is clear beyond cavil that in the insurance context the attorney owes his allegiance, not to the insurance company . . . but to the insured . . . ."); *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 751 (4th Cir. 1989) ("It is universally declared that [insurance defense] counsel represents the insured and not the insurer") *cert. denied sub nom. Anderson v. Aetna Casualty & Surety Co.,* 493 U.S. 959 (1989); *Dempsey v. Associated Aviation Underwriters,* 141 F.R.D. 248 (E.D. Pa.) (stating that insurance defense attorney owes ethical duty exclusively to insured, not insurer) *aff'd,* 977 F.2d 567 (3d Cir. 1992); *Smith v. Anderson-Tuhley Co.,* 608 F. Supp. 1143, 1147 (D.C. Miss. 1985) ("[A]n attorney retained by an insurance carrier to defend an insured represents the insured") *aff'd,* 846 F.2d 751 (5th Cir. 1988); *Atlanta Int'l Ins. Co. v. Bell,* 448 N.W.2d 804, 805 (Mich. Ct. App. 1989) ("The only

as the leading insurance and ethics commentators,[2] have addressed conflicts that arise in such a relationship by applying the "single representation rule." Under this rule, an insurance defense attorney, who is selected and paid by the insurer to defend an insured against a claim, owes an undivided loyalty to the insured and, therefore, represents the insured alone. I

attorney-client relationship which exists is between the attorney and the insured client"), *rev'd on other grounds,* 475 N.W.2d 294 (1991); *First American Carriers v. Kroger Co.,* 787 S.W.2d 669, 671 (Ark. 1990) (stating that insurance defense lawyer must represent the insured as his client with undivided loyalty); *Brohawn v. Transamerica Ins. Co.,* 347 A.2d 842, 852 (Md. Ct. App. 1975) ("[T]he attorney selected by the insurer to represent the insured . . . has the duty to represent the insured with complete fidelity and may not advance the interests of the insurer to the prejudice of the rights of the insured"); *Apex Mutual Ins. Co. v. Christner,* 240 N.E.2d 742, 753 (Ill. App. Ct. 1968) (stating that insurance defense attorney represents insured, not insurer); *Jackson v. Trapier,* 247 N.Y.S.2d 315, 316 (N.Y. Sup. Ct. 1964) (stating that "the defendant is the client and not the insurance carrier even though the latter may have chosen the counsel and may be paying his fee"); *see also* Colorado Bar Ass'n Ethics Op. 91 (1993) (stating that "a lawyer retained by an insurance carrier to defend a claim against the company's insured represents the insured, not the carrier"); New Hampshire Bar Ass'n Ethics Op. 1982–3/2 (1982) ("Lawyers retained by an insurance company to represent insureds must be zealous advocates of the appointed clients, even though such representation would work to the detriment of the insurance company"); ABA Committee on Ethics and Professional Responsibility, Informal Op. 1476 (1981) (stating that "when a liability insurer retains a lawyer to defend an insured, the insured is the lawyer's client.").

[2] *See, e.g.,* 16A J. Appleman & J. Appleman, *Insurance Law and Practice* sec. 8839.35, at 108 n.9.5 (1981); Geoffrey C. Hazard and William Hodes, *The Law of Lawyering* 247–50 (1990).

would join these jurisdictions in adopting the single representation rule in the insurance defense setting, provided that the direct action statute is not involved.

The single representation rule clearly defines the insurance defense attorney's obligation in the event of a conflict of interest. In the instant case, the insured, Marten, selected and paid for an attorney, Attorney Walther. Marten informed its insurer, Hartford, that it had retained Attorney Walther. Under the single representation rule, Attorney Walther owed and continues to owe an undivided loyalty to Marten and, therefore, represents Marten alone. Hartford was not and is not a client of Attorney Walther.

In this case, the insured, not the insurer, selected and paid the attorney. This fact, however, only strengthens my conclusion that Attorney Walther represented and continues to represent only Marten and not Hartford. Indeed, it would defy common sense to apply the single representation rule when the attorney is selected and paid by the insurance company, but not apply the rule when the attorney is selected and paid by the insured. *See Dempsey v. Associated Aviation Underwriters,* 141 F.R.D. 248, 252 (E.D. Pa. 1992). An insured like Marten should not receive less favorable treatment simply because it selected, hired, paid, and established a long-term relationship with its attorney, as opposed to simply having an unknown attorney assigned to the insured by its insurer. Moreover, Hartford initially rejected Attorney Walther and stated that it would not follow his advice.[3]

---

[3] In 1985, approximately two years before Marten purchased insurance from Hartford, Attorney Walther and Marten entered into an attorney-client relationship. Under the worker's compensation policy issued to Marten, Hartford agreed to retain an attorney for Marten and to defend Marten against any

Applying the single representation rule to the case at bar is consistent with the reasonable expectations of the parties, Hartford's arguments to the contrary notwithstanding. Evidence that Hartford understood the relationship between Attorney Walther and itself comes from the retrospective nature of Hartford's policy with Marten. As the court of appeals correctly noted, policies with a retrospective rating can create an inherent conflict of interest between the insured and the insurer. *Marten Transp. Ltd. v. Hartford Specialty,* 180 Wis. 2d 285, 296, 509 N.W.2d 106 (Ct. App. 1993). Because a commission is charged as a percentage of the retrospective premium, commissions increase as premiums increase. Retrospective premiums, in turn, increase as settlements and awards under the policy increase. Thus, as the insurer pays more out in claims, the insured must pay more in premiums and more in commissions to the insurer. *Id.* As an insurer, Hartford undoubtedly understood that this potential conflict of interest existed and, therefore, could not have reasonably expected that the law firm selected, hired, and paid by the insured would actually represent the conflicting

---

covered claim. Initially, Hartford retained counsel, other than Attorney Walther, to represent it and Marten in worker's compensation claims. In February 1989, Marten informed Hartford that Attorney Walther would be acting as Marten's general litigation counsel and, in that capacity, would be defending Marten against worker's compensation claims covered under the Hartford policy. Hartford objected to this arrangement because Attorney Walther was not on Hartford's list of approved attorneys. Hartford also informed Marten that Hartford would not be responsible for any recommendations made or advice given by Attorney Walther regarding claims against Marten. Nonetheless, Hartford acknowledged that Marten had the right to choose its own attorney.

interests of the insurer as well. Hartford was not a neophyte in these matters. I have no doubt that it understood the full effect of the retrospective premiums it charged.

In sum, I would hold that under the single representation rule, an insurance defense attorney, who is selected and paid by either the insured or the insurer to defend the insured, owes an undivided loyalty to the insured and, therefore, represents the insured alone. In this case, Attorney Walther owed an undivided loyalty to Marten and, therefore, represented Marten alone. Attorney Walther and Hartford never entered into an attorney-client relationship. This conclusion comports with Hartford's reasonable expectations, since Hartford should have known that a conflict of interest could exist between Marten and itself as a result of the retrospective nature of the worker's compensation policies. Accordingly, I would reverse the decision of the court of appeals and remand the case to the circuit court for reinstatement of Attorney Walther as counsel for Marten.

I am authorized to state that Justice ROLAND B. DAY joins this concurring opinion.

WILLIAM A. BABLITCH, J. *(dissenting)*. The plurality concludes that Hartford failed to meet its burden of proving the existence of an attorney-client relationship between Hartford and the Walther firm. *Marten Transport, Ltd. v. Hartford Specialty Co.,* Majority op. at 25. I cannot agree with this conclusion given the following facts introduced by Hartford:

1. In the course of handling workers' compensation claims, the Walther firm advised Hartford as to the merits of the claims and possible defenses:

30

—Letter dated May 4, 1990, from the Walther firm to Hartford, stating, inter alia, "I recommend that you pay applicant permanent partial disability benefits. . . . We do have a safety defense against applicant's claim. . . . It appears that we have a strong case on this issue. . . . I recommend we retain Lawrence Hollingsworth as our vocational expert witness. . . . Unless I hear from you to the contrary, I will assume you agree with my recommendation. . . . I recommend we enter into a quick Compromise settlement . . .."

—Letter dated October 16, 1989, from the Walther firm to Hartford, stating, inter alia, "[a]t this time, I recommend that you continue paying applicant permanent partial disability benefits. . . ."

—Letter dated June 13, 1991, from the Walther firm to Hartford, stating, inter alia, "[w]e recommend that no medical expenses be paid for applicant's current back problem."

—Letter dated November 14, 1991, from the Walther firm to Hartford, stating, inter alia, "we recommend payment of the outstanding bill. . . . [W]e believe it would be bad faith to continue to withhold payment of this bill."

2. The Walther firm on numerous occasions represented itself as the attorneys for Hartford:

—Letter dated February 26, 1992, from the Walther firm to Lawrence Hollingsworth, stating, inter alia, "As you are aware, we represent Marten Transport Ltd., The Hartford and Planet Insurance Company for the referenced worker's compensation claim. . . ."

—Letter dated November 28, 1989, from the Walther firm to Mark C. Ryder, stating, inter alia, "We represent The Hartford, your worker's compen-

31

sation insurance carrier, in defense of the referenced claim...."

—Letter dated April 26, 1991, from the Walther firm to Richard Shippy, stating, inter alia, "We represent Marten Transport Ltd. and The Hartford for your worker's compensation claim."

—Letter dated December 26, 1991, from the Walther firm to Thomas M. Frankman, stating, inter alia, "Please take notice that we represent Marten Transport Ltd. and The Hartford...."

—Letter dated September 20, 1991, from the Walther firm to Dr. Paul L. Flicker, stating, inter alia, "As you know, we represent Marten Transport Ltd. and The Hartford...."

—Letter dated December 26, 1990, from the Walther firm to Attorney Thomas E. Lister, stating, inter alia, "As you are aware, we represent Marten Transport Ltd. and The Hartford...."

3. As stated in the court of appeals' decision, Walther negotiated settlements, and held itself out to third parties, including claimants, adjudicatory boards, and a United States district court as the attorney for both Marten and Hartford.

4. Numerous Hartford employees had responsibility for overseeing claims made against Marten and Hartford. These employees indisputably believed that the Walther firm was acting as their attorney in these matters. They stated that had they learned otherwise, they would have retained other counsel to represent Hartford.

The court of appeals, in a unanimous decision, very astutely asked, then answered, a key question:

Marten Transport's argument that Walther was not Hartford's attorney leaves this court to

wonder, if Walther did not represent Hartford's interests, who did? There is no indication in the record that any officer of Hartford or attorney other than Walther appeared on behalf of Hartford in any of these matters. The trial court's answer to this puzzling question, and one with which Marten Transport agrees, was that Walther's appearance on behalf of Hartford was merely 'pro forma.' Marten Transport, in essence, asks this court to hold that it is possible for an attorney to appear before an adjudicatory body in a contested matter, on behalf of a named party, but not be considered the attorney for that party. Such a holding would require this court to conclude that there exist differing levels of representation, with the lowest level being of such a superficial nature that it cannot be considered representation at all. We have found no legal authority for that proposition, and we decline to adopt that rationale.

I agree with the unanimous court of appeals. There is no question that an attorney-client relationship existed here between Mr. Walther and Hartford Insurance Company. I conclude that these facts give rise to more than an "agency" relationship; rather, as the court of appeals concluded, these facts at the very least, give rise to some level of attorney-client representation. In the important area of attorney-client relationships, we ought not adopt "a little bit is ok" rule. Given the above facts, that is at the very least what the plurality adopts. SCR 20:1.7 provides a bright-line rule easily understood by all practitioners. Creating a "little bit is ok" rule blurs the line and raises the question of where the line is drawn for practioners and those charged with enforcing the code of professional conduct.

I further conclude, contrary to the concurring opinion, that this is not the case to apply the single representation rule. *See Marten Transport Ltd. v. Hartford Specialty Co.,* concurring op. at 28. It is questionable whether the single representation rule should even apply in a situation in which the insured hires its own attorney, and then the insured and its attorney take actions and make representations that lead the insurer to believe that the attorney is also representing the interests of the insurer. Such a scenario is arguably present here, and has not been adequately addressed by either party.

Additionally, even if we were to adopt the single representation rule in this case, I would apply it prospectively only. At the time of the attorney-client relationship between Walther and Hartford, SCR 20:1.7 was the standard in this state. Hartford had the right to rely on this standard; Walther had no reason to believe that any other standard applied.

Accordingly, I respectfully dissent. I am authorized to state that Justice JON P. WILCOX joins in this dissent.