EMPLOYERS INSURANCE
COMPANY OF WAUSAU,
Plaintiff,

v.

THE MARLEY COMPANY, Layne and Bowler Division of the Marley Company, Layne and Bowler, Inc., Layne Christiansen Company, Layne–Western Company, Inc., Engineers and Fabricators Company, Marley Cooling Technologies, Inc, and The Marley Cooling Tower Company, Defendants.

No. 05–C–695–C.

United States District Court,
W.D. Wisconsin.

Nov. 17, 2006.

Rolf E. Gilbertson, for Plaintiff.

## OPINION and ORDER

CRABB, District Judge.

In this civil action for declaratory and monetary relief, plaintiff Employers Insurance Company of Wausau contends that defendants The Marley Company, LLC, Engineers and Fabricators Company, Layne and Bowler, Inc., Layne Christiansen Company, Layne–Western Company, Inc., Marley Cooling Technologies, Inc. and The Marley Cooling Tower Company breached their insurance agreements with plaintiff by failing to pay premiums as required under the terms of a retrospective premium endorsement that applied to each of defendants' policies. Plaintiff seeks money damages for past breach and judgment declaring that it is excused from further performance of its duties under the agreement because of defendants' alleged breach.

Now before the court is the motion for partial summary judgment of defendants The Marley Company and SPX Cooling Technologies, which defendant Layne Christiansen Company has joined. Defendants' motion presents one discrete question: Does the retrospective premium endorsement permit plaintiff to charge defendants for reserves set aside for the estimated cost of defending future claims made under the policy? Because the policy is unambiguous in limiting defense costs to expenses already incurred and does not provide for reserves for estimat-ed future defense expenses, defendants' motion will be granted.

Before turning to the undisputed facts, I note that both parties' proposed findings of fact suffer from several deficiencies. Many of the facts proposed by defendants appear irrelevant to their summary judgment motion, while many of plaintiff's responses to defendants' proposed facts are unrelated to the facts proposed. Other proposed facts are unsupported by the materials to which they cite. I have disregarded immaterial facts and have not treated as disputed facts not placed directly in dispute or supported by admissible evidence.

From the parties' proposed findings of fact and the terms of the retrospective premium endorsement, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Employers Insurance Company of Wausau is a Wisconsin corporation with its principal place of business in Wausau, Wisconsin.

Defendant The Marley Company, LLC is a Delaware corporation with its principal place of business in North Carolina. It is the successor in interest to defendants Engineers and Fabricators Company, The Marley Company and Layne and Bowler, Inc.

Defendant Layne Christiansen Company is a Delaware corporation, with its principal place of business in Kansas. Defendant Layne Christiansen Company was known formerly as Layne–Western Company, Inc.

Defendant SPX Cooling Technologies, Inc. is a Delaware corporation with its principal place of business in either Kansas or North Carolina. (It is undisputed that

defendant SPX Cooling Technologies's principal place of business is *not* in Wisconsin.) Defendant SPX Cooling Technologies, Inc. was known formerly by the names Marley Cooling Technologies, Inc. and The Marley Cooling Tower Company.

### B. *The Insurance Contracts*

The relationship between defendants and plaintiff dates back to 1958, when defendants first purchased general liability policies from plaintiff. From 1975 to 1983, plaintiff provided defendants with general liability, workers' compensation and automobile liability policies that contained a retrospective premium endorsement.

Generally speaking, when a policy contains a retrospective premium endorsement, the premium is calculated annually and is adjusted over time according to the changing value of the claims that arise under the policy. Under the terms of the retrospective premium endorsement at issue in this lawsuit, plaintiff calculated defendants' premiums by adding the basic premium, "excess loss premium" and "converted losses." This figure was then multiplied by a "state tax multiplier." This premium amount was subject to both minimum and maximum limits.

The retrospective policy endorsement defines "coverted losses" as the product of incurred losses and a specified loss conversion factor. "Incurred losses" are defined as the sum of all losses paid, reserves for estimated unpaid losses, premiums on bonds paid for by company, interest accruing after entry of a judgment against the insured, allocated loss adjustment expenses, and expenses incurred in seeking recovery against third parties.

In recent years, defendants have been the subjects of a number of asbestosis claims. Beginning in July 2003, plaintiff sent defendants the first of several retrospective premium bills that form the basis of this lawsuit. Plaintiff contends that defendants owe more than $5 million for retrospective premium adjustments invoiced from 2003 to 2005.

### OPINION

### A. *Choice of Law*

■ Diversity of citizenship provides the ground for the exercise of federal jurisdiction over this lawsuit. In a lawsuit based upon diversity, the court applies the choice of law principles of the jurisdiction in which it sits to determine the substantive law that will govern the case. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this court, Wisconsin's choice of law principles apply.

■ In disputes regarding the interpretation of contracts, Wisconsin uses the "grouping of contacts" test to determine the law that should govern a dispute. *Urhammer v. Olson*, 39 Wis.2d 447, 450, 159 N.W.2d 688, 689 (1968); *see also Employers Insurance of Wausau v. Certain Underwriters Lloyd's London*, 202 Wis.2d 673, 691, 552 N.W.2d 420, 427 (Ct.App. 1996). Under this test, a court applies the law of the state with which the contract has the most significant relationship. *Schlosser v. Allis–Chalmers Corp.*, 86 Wis.2d 226, 239, 271 N.W.2d 879, 885 (1978).

In this case, the relevant insurance policies were issued in Wisconsin to defendants, who do business in Kansas. Although defendants do not suggest which state's substantive law should governs this claim, plaintiff contends that the court should apply Wisconsin law. Because the contracts were issued in Wisconsin and parties have offered no reason why Kansas law should apply to this case, I will apply Wisconsin law. *State Farm Mutual Auto. Insurance Co. v. Gillette*, 2002 WI 31, ¶ 51,

251 Wis.2d 561, 641 N.W.2d 662 (holding that Wisconsin courts should assume that Wisconsin law applies unless it is clear that non-forum contacts are more significant).

B. *Retrospective Premium Endorsement*

Retrospective premium policies, such as those at issue in this lawsuit, are used most commonly "in situations in which risk is difficult to determine in advance." *Employers Ins. of Wausau v. Titan International, Inc.,* 400 F.3d 486, 487 (7th Cir. 2005); 5 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 69.15 (3d ed.1996). Typically, a retrospective premium has two components: a basic premium and a conversion loss factor. *Marten Transport Ltd. v. Hartford Specialty Co.,* 194 Wis.2d 1, 10 n. 2, 533 N.W.2d 452, 454, n. 2 (1995) (citing J. Long & D. Gregg, *Property and Liability Insurance Handbook* 540 (1965)). The basic premium is the portion of the standard premium that is set aside to cover the insurer's expenses and profit. *Id.* Payments and reserves on losses incurred by the insured during the policy period are then multiplied by a loss conversion factor to cover the expenses and profit of the third-party administrator of services for the insurer. *Id.* The two sums are combined and modified by additional factors in order to account for premium taxes. *Id.* The final sum is the premium paid by the insured.

> [A]ny losses paid by [the insurer] are converted into additional premiums paid by [the insured]. The result of this shifting of money is that [the insurer's] loss payments are, to a significant degree, simply advances on behalf of [the insured]. As one Commentator has noted, under a retrospectively rated policy, "an insurer is in effect, settling, in part at least, with the insured's money ..."

14 Appleman, *Insurance Law and Practice* § 7849.25, at 139. The purpose of a retrospective premium provision is "to make the premium more closely reflect the actual loss and cost experience of the insured averaging out such experience over an extended period...."

*Edward Gray Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania,* 94 F.3d 363, 367 (7th Cir.1996).

The retrospective premium endorsement at issue in this case differed only slightly from the standard policy described above. The premium was calculated by adding three factors: the basic premium, excess loss premium and converted losses. Converted losses were the product of "incurred losses" and a loss conversion factor. The question is whether the endorsement permitted plaintiff to include in the category of incurred losses reserves set aside to defend against estimated future claims brought under the policies.

 Under Wisconsin law, insurance policies are interpreted in the same manner as other contracts. When interpreting the terms of an insurance policy, courts aim to enforce the intent of the parties, giving the words in the policy their common and ordinary meaning so that the construction conforms to the understanding of a reasonable person in the position of the insured. *State Farm Mutual Automobile Insurance Co. v. Langridge,* 2004 WI 113, ¶¶ 13–14, 275 Wis.2d 35, 683 N.W.2d 75; *Stuart v. Weisflog's Showroom Gallery, Inc.,* 2006 WI App 184, ¶ 18, —— Wis.2d ——, 722 N.W.2d 766. Ambiguities are to be resolved in favor of the insured, but where the plain meaning favors the insurer, courts will resolve coverage against the insured. *Id.,* ¶ 15. When no ambiguity exists, a court will not engage in construction but will merely apply the policy terms, *Kremers–Urban Company v. American Employers Insurance,* 119 Wis.2d 722, 736, 351 N.W.2d 156, 163 (1984), so as "to avoid rewriting the con-

tract by construction and imposing contract obligations that the parties did not undertake." *Danbeck v. American Family Mutual Insurance Co.*, 245 Wis.2d 186, 193, 629 N.W.2d 150, 154 (2001). Ordinarily, the construction of an insurance contract provision is a question of law. *Welin v. American Family Mutual Insurance Co.*, 2006 WI 81, ¶ 16, 292 Wis.2d 73, 717 N.W.2d 690; *West Bend Mutual Insurance Co. v. Playman*, 171 Wis.2d 37, 40, 489 N.W.2d 915, 916 (1992).

The retrospective premium endorsement at issue states that incurred losses are determined by adding:

(1) all losses, including medical, actually paid,

(2) reserves for unpaid losses as estimated by the company,

(3) premiums on bonds paid for by company in accordance with the provisions of the policies,

(4) interest accruing after entry of a judgment against the insured,

(5) allocated loss adjustment expenses, and

(6) expenses incurred in seeking recovery against a third party under the insurance subject to Plan D . . .

The parties appear to agree that "loss adjustment expenses" are those costs associated with defending claims covered by the insurance policies. What they dispute is whether the phrase "allocated loss adjustment expenses" (a term not defined in the policy itself) includes only expenses that have been incurred already or those expenses plus estimated future costs held in reserve.

As plaintiff reads the policy, the term "allocated loss adjustment expenses" includes costs associated with all "losses," which it contends are defined under §§ 1 and 2 to include costs that are "paid" and "unpaid." According to plaintiff, "loss adjustment expenses" are those expenses allocated to (set aside for) paying the cost of handling both current *and* future losses. In other words, "loss adjustment expenses" include the costs of handling the losses mentioned in both §§ (3)(d)(1) and (2), that is, both the losses that have been paid and the unpaid losses that have been estimated by the company. Under this reading, reserves for the cost of adjusting future claims are a permissible allocated loss adjustment "expense."

Defendants read the policy differently. They point out that §§ 3(d)(1) and (2) distinguish between paid losses and reserves for unpaid estimated losses. In contrast, § 3(d)(5) makes no reference to "reserves," including only "loss adjustment expenses." Defendants assert that if loss adjustment reserves were meant to be included as loss adjustment expenses, the policy should say so explicitly, as it does with respect to the unpaid loss reserves mentioned in § 2. After all, defendants assert, by definition an "expense" does not exist until it has been incurred. Because the reserves are allocated to estimated future costs and not to existing ones, they are not yet "expenses" within the common and ordinary meaning of that term.

 I conclude that defendants' reading comports most closely with the plain language of the endorsement. Had plaintiff intended to include reserves within the category of incurred losses authorized by the policy, it knew how to do so, as is evidenced by the express inclusion in § 3(d)(2) of reserves for estimated unpaid losses. That plaintiff failed to define loss adjustment reserves as a form of adjustment "expenses" leads to the conclusion that the word "expenses" should be given its plain meaning: "costs incurred" or "money spent." *The New Oxford American Dictionary* 597 (2001). Neither definition leaves room for money held in anticipation of costs yet to be incurred.

Defendants' motion for partial summary judgment will be granted.

Because I find that the term "allocated loss adjustment expenses" is not ambiguous, it is not necessary to consider extrinsic evidence of the parties' course of dealing, as plaintiff urges, or apply the doctrine of *contra proferentem,* as defendants request. However, because the arguments raised by the parties in their briefs focus mainly on these matters I note for the record that even if the term "allocated loss adjustment expenses" *were* ambiguous (which it is not), plaintiff would fare no better than it does under a plain reading of the policy, for the following reasons.

Plaintiff contends that the court should consider the parties' course of dealing and the common trade usage of "allocated loss adjustment expenses" under Wis. Stat. § 401.205, which provides that "a course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement." Section 401.205(1) permits a court to consider prior dealings between parties when the "sequence of previous conduct ... is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct," while § 405.205(2) permits a court to consider "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." According to plaintiff, it has always included loss adjustment reserves as incurred losses under the retrospective premium endorsement, as do other insurers. Plaintiff contends that defendants have acquiesced in their method of calculation for thirty years and should not be permitted to challenge it now, simply because the premiums for which they bargained have risen higher than they anticipated.

Defendants challenge plaintiff's contentions on two grounds. First, defendants assert that plaintiff's billing methods made it impossible to tell how incurred costs were calculated. Moreover, defendants contend that plaintiff has offered no admissible evidence that loss adjustment reserves *were* included in the bills sent from 1974 to the present. Plaintiff has not submitted the bills themselves and at least one of the two witnesses on whose averments plaintiff relies, Janet Herring, lacks foundation to testify about bills sent to defendants prior to 2000. Yet even if the testimony of plaintiff's remaining affiant, Steven Ginsburg, were enough to create a factual dispute regarding whether the bills sent to defendants from 1974 to the present included reserve amounts as part of the allocated loss adjustment expense calculation, plaintiff has offered no admissible evidence to support its contention that defendants *knowingly* acquiesced in their method of calculation or had any reasonable means of discerning what portion of the incurred losses were attributable to either the allocated loss adjustment expenses generally, or to the reserves amounts particularly. Consequently, plaintiff has failed to raise a genuine issue of fact regarding whether the parties engaged in a course of conduct under which they agreed implicitly to count reserves as expenses under § 3(d)(5) of the endorsement.

Second, defendants note correctly that Wis. Stat. § 401.205(2) is inapplicable to this case. Evidence of a usage of trade is relevant only when the parties are engaged in a mutual trade; here, the doctrine of *contra proferentem* applies. Under that doctrine all ambiguous terms in an insurance contract must be construed against the insurer. *State Farm Mutual*

*Automobile Insurance Co. v. Langridge*, 2004 WI 113, ¶ 44, 275 Wis.2d 35, 683 N.W.2d 75 ("This principle ... may be the transcendent principle for resolving ambiguous language in insurance policies. If an insurance policy is ambiguous, then the policy is to be interpreted against the drafter."). Under this doctrine, any ambiguity in the meaning of the policy terms would have to be construed to favor defendants. *Ennis v. Western Nat. Mutual Insurance Co.*, 225 Wis.2d 824, 834, 593 N.W.2d 890, 894 (Ct.App.1999) ("Since the insurer drafts the policy, it has the opportunity to employ expressive exactitude to avoid a misunderstanding of the policy's terms."). Doing so leads inevitably back to the conclusion that allocated loss adjustment expenses do not include reserves for estimated future adjustment expenses yet to be incurred.

## ORDER

IT IS ORDERED that the motion for partial summary judgment of defendants The Marley Company, LLC, SPX Cooling Technologies, Inc. and Layne Christiansen Company is GRANTED.