**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 22, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1411**

Cir. Ct. No.  **2019PR34**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

IN RE THE ESTATE OF LOIS M. NIES:

MARY NIES AND KAY NIES-TOREN,

   APPELLANTS,

 V.

PROBATE SERVICES, LLC, MARY KUDICK, CAROL METZGER, JEAN THORPE, MICHAEL NIES AND MARK NIES,

   RESPONDENTS.

APPEAL from an order of the circuit court for Brown County: BEAU LIEGEOIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Mary Nies and Kay Nies-Toren, two of the six heirs to the Estate of Lois M. Nies, appeal from a final order denying their petition to have the circuit court order certain directions to the Estate's personal representative.  Mary and Kay[1] argue that the circuit court erred by failing to order the personal representative to have an independent forensic investigation conducted into:  (1) the sale of Lois's farmland real estate; (2) the deposit of rental property proceeds payable to the Estate; (3) a life insurance policy paid as a result of their father Earl Nies's death a few years earlier; and (4) the manner in which $1,050,100 of Lois's cash was located and provided to the Estate.  They also claim the court erred by failing to order the personal representative to produce the will of Earl Nies.  Lastly, Mary and Kay argue the Hanaway Ross Law Firm (Hanaway Ross) should be removed as attorneys for the Estate.  We reject all of Mary and Kay's arguments and affirm.

## BACKGROUND

¶2     Lois died on January 7, 2019, without a will.  Her husband, Earl, predeceased her on October 15, 2017.  Lois and Earl had six children together:  Kay, Mary, Jean Thorpe, Carol Metzger, Mark Nies and Michael Nies.  At the time of her death, Lois owned an investment account at Edward Jones containing a balance of nearly four million dollars.  The investment account had a payable on death (POD) provision that designated the six children as the beneficiaries to be paid in equal shares.  The money in the account has been paid equally to the six children consistent with the POD provision and is not a subject

---

[1] Because some of the parties share a surname, we refer to them individually by their first names.

of this appeal. In addition to the investment account, Lois had a safe deposit box containing cash in the amount of $1,050,100.

¶3 Lois also owned farmland that, prior to her death, she placed for auction with a list price of $800,000. The agreement with the auctioneer provided for a ten percent fee if the auctioneer found a buyer willing to pay the full list price. The auction garnered an offer to purchase for $643,500 with a closing date of no later than February 14, 2019, which was accepted before Lois's death. Following the auction, the auctioneer's fee was renegotiated to four percent.

¶4 Mary Kudick of Probate Services, LLC (Kudick) was named as special administrator of Lois's estate for the sole purpose of completing the real estate transaction. Kudick deposited the gross proceeds from the farmland sale into the Estate's checking account.

¶5 After Lois died, Mark and Michael retained attorney Christina Peterson, who at that time was a member of One Law Group, S.C., to represent the Estate during its administration. Peterson had previously assisted Lois and Earl with their estate planning. She subsequently left One Law Group and joined Hanaway Ross. Peterson had originally recommended that the children open an informal administration appointing Mark and Michael as co-personal representatives. When Mary and Kay objected to Mark and Michael acting as co-personal representatives, the Estate was opened with their consent as a formal administration, and Kudick was appointed personal representative.

¶6 Mark and Michael obtained the $1,050,100 from the safe deposit box and ultimately provided that money to Kudick. Kudick filed an inventory in the Estate proceeding reflecting that Lois died with $1,693,600 in assets subject to probate administration consisting of the $643,500 gross proceeds from the

farmland sale and the $1,050,100 from the safe deposit box. Kudick then paid the four percent auctioneer's commission from the Estate checking account. Just prior to the inventory filing, Mary and Kay sent a letter to the Brown County register in probate requesting that irregularities in the Estate be investigated. The register in probate responded, stating that she would take no further action on the issues raised by Mary and Kay.

¶7 Attorney Warren Wanezek then entered an appearance on behalf of Mary and Kay, and on November 7, 2019, he filed a petition on their behalf for the circuit court to issue certain directions to the personal representative. In that petition, Mary and Kay requested that the court order the personal representative to investigate what they asserted were irregularities in the handling of the Estate. They also included a request to replace Hanaway Ross as legal counsel for the Estate due to an alleged conflict of interest and a failure to investigate various acts of alleged misconduct.

¶8 A hearing on Mary and Kay's petition was held on February 18, 2020. On March 16, 2020, the circuit court issued a written decision denying the petition for the removal of Hanaway Ross and Mary and Kay's request to order the personal representative to conduct an independent investigation into various acts of "fraud, waste and/or mismanagement" by Mark and Michael. In short, the court determined that Mary and Kay failed to provide any credible evidence of the need for either an independent forensic investigation into the probate of the estate or the need to remove the Estate's attorneys. On July 8, 2020, the court issued an amended decision taking into consideration various objections and concerns Mary and Kay had with the original decision, but leaving intact the substance of the decision.

¶9 Mary and Kay appealed from the order denying their petition. Meanwhile, the remainder of the documents necessary to finalize the Estate's administration were completed and filed. A final hearing, however, has been adjourned pending the outcome of this appeal. Additional facts are provided in the discussion below.

## DISCUSSION

¶10 On appeal, Mary and Kay present the same five alleged events that they raised in the circuit court as the basis for their request for a forensic investigation under WIS. STAT. § 879.61 (2019-20)[2]—namely, various acts of "fraud, waste and/or mismanagement" by Mark and Michael in: (1) the sale of Lois's farmland real estate; (2) the deposit of rental property proceeds payable to the Estate; (3) a life insurance policy paid as a result of their father Earl Nies's death a few years earlier; (4) the manner in which $1,050,100 of Lois's cash was located and provided to the Estate; and (5) failure to produce the will of Earl Nies.

---

[2] WISCONSIN STAT. § 879.61 provides that:

> Any personal representative or any person interested who suspects that any other person has concealed, stolen, conveyed or disposed of property of the estate; or is indebted to the decedent; possesses, controls or has knowledge of concealed property of the decedent; possesses, controls or has knowledge of writings which contain evidence of or tend to disclose the right, title, interest or claim of the decedent to any property; or possesses, controls or has knowledge of any will of the decedent, may file a petition in the court so stating. The court upon, such notice as it directs, may order the other person to appear before the court or a circuit court commissioner for disclosure, may subpoena witnesses and compel the production of evidence, and may make any order in relation to the matter as is just and proper.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶11    Under WIS. STAT. § 879.61, the circuit court, in its discretion, determines if a personal representative or interested person should be granted discovery as part of the probate proceedings, and, if so, whether any further relief will be granted. *In Matter of Guardianship of Wisnewski*, 100 Wis. 2d 391, 393-96, 302 N.W.2d 79 (Ct. App. 1981). The court's determination will not be set aside on appeal absent an erroneous exercise of discretion. *Id.* at 396. We will uphold a court's discretionary decision if it can be concluded from the record that the facts would support the court's decision. *Id.* In determining whether to grant a petition under § 879.61, the circuit court should have borne in mind the following factors: "(1) [t]he extent to which an opportunity for a quick and complete examination had been provided to prevent deception or surprise; (2) the potential abuse of discovery as a fishing expedition, delaying tactic or harassment device; and (3) the availability of alternative discovery methods." *Wisnewski*, 100 Wis. 2d at 396. Mary and Kay contend that the circuit court erroneously exercised its discretion by denying their § 879.61 claims. We address each of their claims in turn.

### A. Farmland Real Estate

¶12    Mary and Kay first argue that the circuit court erroneously exercised its discretion by concluding there was no basis to order further investigation into the sale of Lois's farmland real estate. Mary and Kay contend an appraisal obtained after Lois's death showing a fair market value (FMV) of $923,000 proves the farmland was improperly sold for less than its FMV. The court concluded that Mary and Kay did not have all the information needed before asserting their opinions. In fact, the court reasoned that the cross-examination of Kay by Hanaway Ross refuted Mary and Kay's claims because the auction contract was already in place when Lois passed away.

6

¶13 Fair market value is defined as "the price that property will bring when offered for sale by one who desires but is not obligated to sell and bought by one who is willing but not obligated to buy." *Liddle v. Liddle*, 140 Wis. 2d 132, 138, 410 N.W.2d 196 (Ct. App. 1987). Here, although the property was sold for an amount lower than the subsequently appraised value, there is no dispute it was sold to the highest bidder at the time of the auction. Mary and Kay presented no evidence that the auction was held improperly, either as to advertising or timing. The mere fact that a higher appraisal was obtained after Lois's death did not provide a basis for the circuit court to order further discovery regarding the auction price or to take action against the Estate because FMV is determined at the time of the auction sale, not at some later date. The subsequent appraisal did not support a claim that Mark or Michael "concealed, stole[], conveyed or disposed of property of the [E]state[,]" as is required for the court to order discovery under WIS. STAT. § 879.61.

¶14 Further, Mary and Kay testified that they knew there was an accepted offer to purchase the farmland at the time of the auction and they did not object to the sale prior to its closing. Instead, they waited 265 days to raise any issue. This fact negates any alleged concealment or theft by Mark or Michael. Mary and Kay failed to take advantage of the opportunity for a quick and complete examination prior to the closing. Their failure to do so supports the circuit court's decision not to order further investigation into the farmland sale.

¶15 Mary and Kay also contend that the circuit court should have ordered an investigation into the farmland sale because Mark and Michael arranged for a "kick back" from the auctioneer's fee. They base this claim upon a phone conversation between Kay and the auctioneer to which Kay testified at the hearing only as hearsay. Mary and Kay contend that the court should have

required documents evidencing the amount received on sale to be produced. Mary and Kay, however, presented no evidence that the gross proceeds obtained from the sale were not provided to Kudick and deposited in the Estate's checking account. Additionally, they presented no evidence that Mark and Michael obtained any "kick back" from the sale. For these reasons, the court properly found that there was no reasonable basis for further investigation into the property's sale, and the court properly exercised its discretion in rejecting Mary and Kay's request.

### B. Rental Property Checks

¶16　Mary and Kay next claim that Mark and Michael did not place all of Lois's rental property proceeds into the Edward Jones account prior to her death. That claim was based entirely upon Kay's testimony that Mark and Carol told her they noticed some cash and checks from the rental property were not being deposited into the Edward Jones account and that is why Mark got involved. In addition, Kay also testified that Mark told her that when one of their parents' properties sold in 2014, the funds were not immediately deposited into the Edward Jones account.

¶17　The circuit court concluded that Kay's testimony did not provide a basis for further investigation. Kay admits that the only evidence she has to support this claim is "what Mark told [her]." But, Mark also told Kay that the money is "in [the Edward Jones account] now." Thus, by Kay's own admission, there was no evidence that all of the funds were not accounted for, or that they were diverted or concealed. Mary and Kay's claim regarding the rental property proceeds therefore amounts to mere speculation, and the court properly rejected it.

### C. *Life Insurance Policy*

¶18    Kay testified that she overheard on the phone that Michael and/or Jean stated that Earl had a $700,000 life insurance policy that should have been paid to Lois when Earl died.  Kay was not sure of the exact amount of insurance coverage.  Mary and Kay contend that Lois should have received $700,000 from that life insurance policy after Earl died.  Kay claims she did not receive an accounting of the deposits to Lois's Edward Jones account, and, therefore, she did not know whether the life insurance proceeds were deposited.

¶19    Kay, however, fails to provide any evidence to support this claim. The evidence from the motion hearing established that $95,469.68 in life insurance proceeds was paid into Lois's Edward Jones account by American General Life Insurance Company (American General) following Earl's death, not the alleged $700,000 that Kay believed.  In fact, a letter dated July 1, 2019, from American General to Kudick states that the $95,469.68 was paid into the Edward Jones account, a non-probate asset, sometime after Earl died on October 15, 2017. The balance of that account was subsequently distributed to each of the heirs according to the POD terms.  The circuit court found that the $700,000 claim was based upon "speculation and assumption," and it properly exercised its discretion in rejecting this claim.

### D. *$1,050,100 in Cash*

¶20    Mary and Kay also assert that the circuit court erroneously exercised its discretion by denying their petition to investigate the source of the money located in Lois's safe deposit box.  They appear to claim that Mark and Michael hid the money since 2013 when Earl and Lois moved to an assisted living facility. They question its source, claiming that their father was a shrewd investor and

would never have kept this amount of cash on hand. Additionally, Mary and Kay claim that Mark and Michael developed a scheme to hide the cash from the Estate and its personal representative by giving their siblings the cash directly, rather than through the Estate account. They appear to claim that Mark and Michael hid the money in order to avoid paying taxes and included this money when calculating the personal representative's fee. According to Mary and Kay, Kay received text messages and calls from Jean explaining that the cash would be transferred outside of the Estate proceedings and that Michael and Mark were holding the cash to avoid having it placed in the Estate's account.

¶21   Despite the above allegations, Kay testified that she was aware, in 2014, that her parents gave large cash gifts of $25,000 to each of their ten grandchildren. Additionally, attorney Daniel Duke of Hanaway Ross, sent a letter to all of the Estate's beneficiaries indicating that the original source of the $1,050,100 was cash located in a home safe. At the time Earl and Lois moved to an assisted living community, the cash was removed from the safe, counted, and placed in a safe deposit box. A partial distribution of $175,000 was then provided to each of the heirs.

¶22   The circuit court denied Mary and Kay's request for an investigation into the source of the safe deposit box funds. It found that Michael and Mark's delay in providing the funds to the personal representative was due to their waiting for the time for filing claims against the Estate to lapse. There was no evidence that all of the funds were not accounted for and delivered to the Estate account. Further, the court noted that Jean, and not Michael or Mark, contacted Mary and Kay about the money scheme. Under these facts, we conclude the court did not err in denying Mary and Kay's petition.

¶23 In addition, Mary and Kay also claim that they are entitled, under WIS. STAT. § 879.63, to fees for locating the cash and ensuring it was provided to Kudick. That statute provides:

> Whenever there is reason to believe that the estate of a decedent as set forth in the inventory does not include property which should be included in the estate, and the personal representative has failed to secure the property or to bring an action to secure the property, *any person interested may, on behalf of the estate, bring an action in the court in which the estate is being administered to reach the property and make it a part of the estate.* If the action is successful, the person interested shall be reimbursed from the estate for the reasonable expenses and attorney fee incurred by the person in the action as approved by the court but not in excess of the value of the property secured for the estate.

Sec. 879.63 (emphasis added).

¶24 Again, the circuit court properly exercised its discretion in denying this claim. The court found that the cash was provided to Kudick independently and at about the same time as the concerns were raised by Mary and Kay. Further, the sisters incurred no costs or attorney fees in raising the issue, as they did so before they retained counsel, and they did not file an action to secure the property. There is no basis for this claim, and the court properly found that Mary and Kay were not entitled to any fees pursuant to WIS. STAT. § 879.63.

*E. Earl's Will*

¶25 Finally, Mary and Kay argue that the circuit court should have ordered the Estate to produce Earl's will as part of the probate proceedings for Lois's Estate. They contend the Estate was required to do so because they wanted to know "if Earl's estate was properly executed as it pertains to the Estate of Lois

Nies." Additionally, they claim that without the will, "there is no ability to discern what the Estate of Lois even owned."

¶26    We conclude the circuit court properly exercised its discretion in denying this request. Kudick was appointed to represent Lois's Estate, not Earl's. Kudick had the duty to "collect, inventory and possess all of the decedent's estate …." *See* WIS. STAT. § 857.03(1). The primary duties of the personal representative "are to manage the affairs of the decedent [Lois], to ensure the decedent's creditors are satisfied, and to distribute the residue of the estate according to the will of the decedent." *Old Republic Surety Co. v. Erlien*, 190 Wis. 2d 400, 411, 527 N.W.2d 389 (Ct. App. 1994). Thus, Kudick had no duty to investigate Earl's will. Further, it was irrelevant what Earl's will stated, as his will would not evidence whether assets that were bequeathed to Lois from Earl remained in her possession at the time of her death. If Mary and Kay had questions regarding Earl's estate, they could have raised them during the probate proceeding for his estate. The court did not err in denying this request.

¶27    In summary, the circuit court properly concluded that Mary and Kay failed to make a prima facie case under WIS. STAT. § 879.61 for any of the investigation they requested. There was insufficient evidence to show that Estate assets were stolen, concealed or controlled by Mark and Michael or by the other siblings. Instead, Mary and Kay's allegations were based upon assumptions, conjecture and speculation. Some of the relief they sought could not be obtained in an action against Lois's Estate. The court properly noted that the evidence was insufficient, especially when weighed against the cost of such an investigation to the Estate and other siblings through their reduced shares. The investigation was not likely to yield any evidence of concealed or dissipated assets, and the court properly exercised its discretion in dismissing Mary and Kay's petition.

¶28     Mary and Kay also argue that the circuit court erred in failing to remove Hanaway Ross as counsel for the Estate based upon "alleged or potential conflicts of interest and the appearance of impropriety." They claim that Peterson, now with Hanaway Ross, first represented Michael and Mark when attempting to open the informal administration and appointed them as personal representatives. Mary and Kay only consented to administration of the Estate when it was opened formally with Kudick as the personal representative. When Mary and Kay objected to Hanaway Ross representing the Estate, Kudick provided referrals of four different lawyers. They claim they would have never consented to Kudick as the personal representative if they knew she would retain Hanaway Ross.

¶29     In addition, Mary and Kay claim that Peterson hung up on them during their first phone call and insisted that she represented all six siblings; however, this claim was directly contrary to the statement of the register in probate who told them to seek legal advice. Mary and Kay claim three alleged conflicts that justify Hanaway Ross's removal: (1) One Law Group represented Alex Nies, Michael Nies's son, on an unrelated matter; (2) Peterson previously represented Earl and Lois with their estate planning; and (3) a relationship existed between One Law Group and Hanaway Ross.

¶30     Motions to disqualify an attorney in a given case are reviewed under the erroneous exercise of discretion standard. *Marten Transport Ltd. v. Hartford Specialty Co.*, 194 Wis. 2d 1, 13, 533 N.W.2d 452 (1995). We will reverse a discretionary decision when the exercise of discretion is based on an error of law. *Id.* "Where the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is consistent with applicable law and one a reasonable judge could reach," we will affirm the decision. *Id.*

¶31     We conclude that the record supports the circuit court's conclusion that there was no basis to remove Hanaway Ross as counsel for the Estate.  First, there was no evidence to suggest that Peterson represented Alex Nies.  Peterson's prior firm, One Law Group, did represent Alex, but Peterson herself had nothing to do with that representation, and she was not even with Hanaway Ross at that time.  Therefore, no conflict of interest existed for Peterson.  Other than learning that Alex was represented by Peterson's prior law firm, Mary and Kay could not provide any reason as to why this limited fact would raise a conflict.

¶32     Additionally, the fact that Peterson previously assisted Earl and Lois with estate work does not, without more, create a conflict of interest.  Mary and Kay provide no citation to legal authority that such prior representation presented a conflict for Peterson in this matter.  Indeed, there may be some efficiencies with attorneys who handled the estate planning representing the resulting probated estate.  Finally, there is no evidence of any relationship between Peterson's prior law firm and Hanaway Ross.  Those are two separate law firms situated in separate cities.  Ultimately, the circuit court did not err in concluding that no conflict of interest existed.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

14